IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| SOVERAIN SOFTWARE LLC, | |
| Plaintiff, | |
| v. | |
| J.C. PENNEY CORPORATION, INC., | Civil Action No. 6:09-CV-274 |
| AMWAY CORP., | |
| AVON PRODUCTS, INC., | JURY TRIAL DEMANDED |
| BIDZ.COM, INC., | |
| ETRONICS, INC., | |
| HSN, INC., | |
| HSN IMPROVEMENTS, LLC, | |
| CORNERSTONE BRANDS, INC., | |
| BALLARD DESIGNS, INC., | |
| GARNET HILL, INC., | |
| SMITH& NOBLE, LLC, | |
| THE TERRITORY AHEAD, INC., | |
| QVC, INC., | |
| SHUTTERFLY, INC., | |
| VICTORIA'S SECRET STORES BRAND MANAGEMENT, INC., | |
| VICTORIA'S SECRET DIRECT BRAND MANAGEMENT, LLC, | |
| VISTAPRINT, LTD., and | |
| VISTAPRINT USA, INC., | |
| Defendants. | |

**STIPULATED ESI DISCOVERY ORDER**

After considering the parties' Joint Motion for Entry of a Stipulated ESI Discovery Order, the Court enters the following Stipulated ESI Discovery Order:

1. The parties have discussed the preservation and electronic production of electronically-stored and hard copy information. The parties have agreed that, when possible, electronically-stored documents in English that are text-searchable

in their native form will be produced, at the option of the producing party, in their native format or as .tiff images or searchable .pdf images with appropriate Bates numbers and confidentiality designations and, in the case of .tiff images, with load files that denote document breaks and extracted or OCR'd text that is searchable (i.e., production in native format is permitted but not be required, although the parties may later agree to produce certain information in Excel or other native format to facilitate use by each side). No party will be obligated to render a document that is not searchable in its native format, or that the party does not possess in its native format, to searchable form for the purposes of producing the document. As to documents written primarily in languages other than English, there is no obligation for any party to produce such documents with extracted text that is searchable. However, in producing documents written primarily or entirely in languages other than English, the parties agree that the producing party will produce all non-privileged English translations of such documents that were prepared by or on behalf of the producing party before the filing of this litigation; and (2) all certified English translations created during this litigation of documents written primarily or entirely in languages other than English that a party intends to rely upon at trial or in motion practice.

2.     Source code shall be made available for inspection in native format or in an electronically-searchable form. CAD, schematic, software, or other similar technical files shall be produced in native format or, if in non-native format, at a resolution where all information is readable and in a manner that preserves all text present in such files, including spaces, underscores, and other characters. When

requested by the receiving party, the producing party will provide information sufficient to enable the receiving party to identify the native format of any native format files specified by the receiving party within ten (10) business days of receiving the request to specify the native format of such files.

3.  For documents that originally exist in paper form, such documents may be produced in paper form, if the producing party prefers. However, to the extent the producing party creates .tiff images or searchable .pdf images of paper documents, the tiff images or searchable .pdf images of such documents will be produced as set forth in paragraph 1 above instead of, or in addition to, any paper documents within the later of: 1) the date of production of the preexisting document (either paper or electronic non-searchable); or 2) 10 business days of completing the conversion.

4.  The parties have further agreed to delay the search and production of electronic mail ("email") until such time as the receiving party has reviewed the contents of the producing party's document production and determines that electronic mail and electronic mail documentation is required. To the extent that the discovery sought is considered unduly burdensome by the producing party, the producing party can object on that basis, and the requesting party can seek relief from the Court.

5.  The parties have further agreed to delay the search and production of metadata (as used herein to refer to electronically stored information about the document that does not appear on the face of the original document if emailed or

printed), audio, or video information until such time as the receiving party has reviewed the contents of the producing party's document production and determines that metadata, audio, and/or video information is reasonably required. To the extent that the discovery sought is considered unduly burdensome by the producing party (or otherwise objectionable under the applicable rules), the producing party can object on that basis and the requesting party may seek relief from the Court. The parties further agree in this regard, however, that neither party need deviate from the practices it normally exercises with regard to creation and/or maintenance of such "metadata, audio, or video information."

6. The parties have agreed to delay the search and production of materials retained in tape, floppy disk, optical disk, or similar formats used primarily for back-up or disaster recovery purposes until such time as the receiving party has reviewed the producing party's document production and determined that discovery of such materials is required. The parties will meet and confer to discuss the parameters of the search and production of any such materials. To the extent that the discovery sought is considered unduly burdensome (or otherwise objectionable under the applicable rules) by the producing party, the producing party can object on that basis and the requesting party may seek relief from the Court. The parties have further agreed to delay the search and production of archives that were created solely for disaster recovery purposes, are not used in the ordinary course of a party's business, and are stored on computer servers, external hard drives, notebooks, or personal computer hard drives until the receiving party has reviewed the producing party's document production and

determined that production of such materials is required. The parties will meet and confer to discuss the parameters of the search and production of any such materials. To the extent that the discovery sought is considered unduly burdensome (or otherwise objectionable under the applicable rules) by the producing party, the producing party can object on that basis and the requesting party may seek relief from the Court. The parties further agree in this regard, however, that any party that has represented that it has no reason to believe that any disaster recovery backup is the sole source of any relevant information need not deviate from the practices it normally exercises with regard to such "tape, floppy disk, optical disk, or similar formats primarily for back-up or disaster recovery purposes" (e.g., recycling of back-up tapes conducted in the ordinary course of a party's business operations is permitted).

7.      The parties agree to the production of final, rather than draft, marketing, business planning, licensing, and/or financial materials. The parties also agree to the initial production of summary financial materials in lieu of all invoices, receipts, purchase orders, etc. The receiving party may request the underlying data from the producing party if the summary financial materials do not contain the information it seeks.

8.      The parties have also agreed that if responsive documents are located on a centralized server or network, the producing party shall not be required to search for additional, identical copies of such responsive documents that may be located on the personal computer, or otherwise in the possession, of individual employees absent a showing of good cause that the production of such additional copies is

necessary. The parties will meet and confer to discuss the parameters of the search and production of any such documents. The parties have also agreed that if responsive documents are located on a centralized server, network, or an individual employee's computer, the producing party shall not be required to search for additional, identical copies of such responsive documents that may be located on any (other) individual employee's computer, or otherwise in the possession, of individual employees absent a showing of good cause that the production of such additional copies is necessary. The parties further agree that neither party need deviate from the practices it normally exercises with regard to such additional, identical copies.

9.  Any agreement in paragraphs 4-8 in this protocol that delays or foregoes production of any information or permits a party to object to production of any information on any basis (e.g., because such production is unduly burdensome) is not intended to and does not change the burdens of production and/or proof associated with showing the need for and/or objecting to discovery of any kind addressed in this protocol in the context of a motion to compel under Rule 37.

10. Except as provided for in Paragraph 6 with regard to materials retained primarily for back-up or disaster recovery purposes, the parties shall take reasonable, good faith efforts to preserve non-duplicative, relevant information.

11. Any general agreement in this protocol to produce email or other documents is not intended to and does not waive any immunity from production that may apply in any specific circumstance, including but not limited to the

attorney-client privilege and work product doctrines.

**So ORDERED and SIGNED this 25th day of June, 2010.**



_____
    **LEONARD DAVIS**
    **UNITED STATES DISTRICT JUDGE**