**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| Soverain Software LLC,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>J.C. Penney Corporation, Inc.,<br>Amway Corp.,<br>Avon Products, Inc.,<br>Bidz.com, Inc.,<br>HSN, Inc.,<br>HSN Improvements, LLC,<br>Cornerstone Brands, Inc.,<br>Ballard Designs, Inc.,<br>Garnet Hill, Inc.,<br>Smith & Noble, LLC,<br>The Territory Ahead, Inc.,<br>QVC, Inc.,<br>Shutterfly, Inc.,<br>Victoria's Secret Stores Brand Management,<br>Inc.,<br>Victoria's Secret Direct Brand Management,<br>LLC,<br>VistaPrint, Ltd., and<br>VistaPrint USA, Inc.<br><br>　　　　　Defendants. | Civil Action No.  6:09-cv-00274-LED |

**SOVERAIN'S REVISED OPENING CLAIM CONSTRUCTION BRIEF
PURSUANT TO PATENT RULE 4-5(a)**

# TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................1

II.  LEGAL STANDARD ...........................................................................................3

III.  U.S. PATENT NOS. 5,715,314 AND 5,909,492 ..................................................4

    A.  Technology Background ..............................................................................4

    B.  Construction of Disputed Claim Terms .......................................................5

        1.  "buyer computer for operation by a user"......................................5

        2.  "client computer for operation by a client user".........................6

        3.  "collection" ...................................................................................7

        4.  "network-based sales system"......................................................8

        5.  "payment computer" .....................................................................9

        6.  "payment message"......................................................................9

        7.  "plurality" ...................................................................................10

        8.  "plurality of respective products / plurality of products [added to said/the shopping cart]" ...........................................................11

        9.  "shopping cart computer" ..........................................................12

        10.  "shopping cart message"...........................................................13

        11.  "universal resource locator".....................................................14

IV.  U.S. PATENT NO. 7,272,639 ............................................................................15

    A.  Technology Background ............................................................................15

    B.  Construction of Disputed Claim Terms .....................................................16

        1.  "appending the stored session identifier to each of the subsequent distinct requests"......................................................16

        2.  "a service request to which a session identifier stored at the client has been appended by the client"..............................17

        3.  "session identifier".....................................................................18

4.      "session identifier appended to the service request / appended session identifier"................................................................................18

5.      "stored session identifier" ...........................................................19

6.      "validating the session identifier appended to the service request"...........21

V.      CONCLUSION...............................................................................................22

# TABLE OF AUTHORITIES

**Page**

### Cases

*Amgen, Inc. v. Hoechst Marion Roussel,*
  314 F.3d 1313 (Fed. Cir. 2003).................................................................................3, 29

*Bicon, Inc. v. The Straumann Co.,*
  441 F.3d 945 (Fed. Cir. 2006)........................................................................................18

*Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.,*
  246 F.3d 1336 (Fed. Cir. 2001).......................................................................................5

*Finisar Corp. v. DirecTV Group, Inc.,*
  523 F.3d 1323 (Fed. Cir. 2008).......................................................................................4

*Liebel-Flarsheim Co. v. Medrad, Inc.,*
  358 F.3d 898 (Fed. Cir. 2004).........................................................................................3

*Nazomi Commc'ns, Inc. v. ARM Holdings, PLC,*
  403 F.3d 1364 (Fed. Cir. 2005).......................................................................................3

*Oatey Co. v. IPS Corp.,*
  514 F.3d 1271 (Fed. Cir. 2008)......................................................................................24

*Orion IP, LLC v. Staples, Inc.,*
  406 F. Supp. 2d  717 (E.D. Tex. 2005) ..........................................................................13

*Phillips v. AWH Corp.,*
  415 F.3d 1303 (Fed. Cir. 2005).......................................................................2, 3, 4, 19, 27

*Pitney Bowes Inc. v. Hewlett-Packard Co.,*
  182 F.3d 1298 (Fed. Cir. 1999)..................................................................................2, 11

*SRAM Corp. v. AD-II Eng'g, Inc.,*
  465 F.3d 1351 (Fed. Cir. 2006)......................................................................................28

*Stumbo v. Eastman Outdoors, Inc.,*
  508 F.3d 1358 (Fed. Cir. 2007)......................................................................................18

*TurboCare Div. of Demag Delaval Turbomachinery Corp. v. Gen. Elec. Co.,*
  264 F.3d 1111 (Fed. Cir. 2001).......................................................................................6

*Voda v. Cordis Corp.,*
  536 F.3d 1311 (Fed. Cir. 2008)......................................................................................29

## I.      INTRODUCTION

Plaintiff Soverain Software LLC ("Soverain") respectfully submits this revised opening brief in support of its proposed constructions of disputed terms and phrases in the asserted claims of the patents-in-suit – U.S. Patent Nos. 5,715,314 ("the '314 patent"), 5,909,492 ("the '492 patent"), and 7,272,639 ("the '639 patent").[1]

This case is not a blank slate.  It follows two earlier cases before this Court involving the same or related patents to the patents at issue here.  The Court has extensive experience with these patents and has already construed numerous terms in the asserted claims.

In *Soverain Software LLC v. Amazon.com, Inc.*, 6:04-cv-00014 ("*Amazon*"), the Court construed 20 terms in the claims of the '314 and '492 patents, and 14 terms in the claims of U.S. Patent No. 5,708,780 – the parent of the '639 patent.  Ex. A., *Amazon* D.I. 246.  The Court reviewed extensive briefing from the parties, heard oral argument during a *Markman* hearing, and issued a comprehensive order explaining the Court's analysis of the intrinsic and extrinsic evidence, the arguments of the parties, and the bases for the Court's rulings.  Subsequently, in *Soverain Software LLC v. Newegg Inc.*, 6:07-cv-00511 ("*Newegg*"), the Court adopted the parties' agreed constructions for 29 terms in the claims of the '314, '492, and '639 patents, and otherwise reaffirmed its constructions in *Amazon*.  Exs. B and C, *Newegg* D.I. 192, 214.

In the first P.R. 4-3 statement filed in this case, Defendants disputed the meaning of 23 terms from the '314 and '492 patents, and 8 terms from the '639 patent.  During two meet and

---

[1]    Pursuant to the Court's Docket Control Order (D.I. 175), Soverain originally filed its opening claim construction brief on September 20, 2010.  On October 1, 2010, after reviewing the parties' P.R. 4-3 statement, the Court entered an Order directing the parties to meet and confer to "narrow the number of disputed terms to a reasonable number," and to submit an amended P.R. 4-3 statement by October 6, 2010.  (D.I. 271).  The Court's Order provides that Soverain may file this revised opening claim construction brief by October 8, 2010.  The Court also extended the deadlines for Defendants' opposition brief  and Soverain's reply brief to October 15 and October 22, 2010, respectively.

confer conferences between the parties, on October 5 and 6, Defendants agreed with Soverain that 12 of these terms do not require construction, but should simply be understood according to their plain and ordinary meaning.  For two additional terms, "computer" and "message," Defendants agreed to adopt the Court's construction in the *Amazon* case – as proposed by Soverain – subject to Defendants' right to appeal based on the record in *Amazon*.

Despite this progress in narrowing the issues, 17 terms remain in dispute.  For many of these terms, Defendants ask the Court to ignore its earlier rulings and re-construe terms that the Court has already analyzed and construed in the earlier cases.  Defendants, however, fail to identify any flaw in the Court's earlier reasoning.  Instead, Defendants merely rehash arguments that the Court has already considered and rejected.  Defendants brush aside the Court's earlier rulings and attempt to start from scratch in a waste of the Court's time and resources.

Defendants also dispute the construction of certain terms that should simply be understood in terms of their plain and ordinary meaning.  Defendants attempt to read additional limitations into many of these disputed terms by piling on elaborate definitions that are found nowhere in the intrinsic evidence.  For other terms, Defendants attempt to limit the claims to a preferred embodiment or to read express limitations from the dependent claims into the independent claims, violating some of the most fundamental principles of claim construction.[2]

As discussed in more detail below, the Court should continue to rely on its constructions of terms that have already been applied in prior cases.  With respect to the additional terms that Defendants dispute, the plain and ordinary meaning either requires no construction or is readily

---

[2]   Defendants' scattershot approach to claim construction is exemplified by the fact that for many of the disputed limitations, Defendants cannot even agree among themselves as to a consistent meaning for the disputed term.  In those instances, Defendants propose two, and sometimes three, alternative constructions.

found in the intrinsic evidence.  Thus, Soverain respectfully requests that the Court adopt its

proposed constructions of the disputed claim terms as set forth below.

## II.     LEGAL STANDARD

The Court is familiar with the applicable legal framework for claim construction, for

example, as discussed in the Court's earlier Memorandum Opinion in *Amazon*.  Ex. A, *Amazon*

D.I. 246 at 2-5.  As the Court recognized in that case, "[t]he starting point for any claim

construction must be the claims themselves."  *Pitney Bowes Inc. v. Hewlett-Packard Co.*, 182

F.3d 1298, 1305 (Fed. Cir. 1999).  "[T]he words of a claim are generally given their ordinary and

customary meaning."  *Phillips*, 415 F.3d at 1312.  "[T]he ordinary and customary meaning of a

claim term is the meaning that the term would have to a person of ordinary skill in the art in

question at the time of the invention."  *Id.* at 1313.  When the ordinary meaning of the claim

language is readily apparent, claim construction may involve "little more than the application of

the widely accepted meaning of commonly understood words."  *Id.* at 1314.

"[T]he specification is always highly relevant to the claim construction analysis" and is

considered "the single best guide to the meaning of a disputed term."  *Id.*  "[A]lthough the

specification often describes very specific embodiments of the invention, [the court has]

repeatedly warned against confining the claims to those embodiments."  *Id.* at 1323; *Nazomi*

*Commc'ns, Inc. v. ARM Holdings, PLC*, 403 F.3d 1364, 1369 (Fed. Cir. 2005).  "Even when the

specification describes only a single embodiment, the claims of the patent will not be read

restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using

words or expressions of manifest exclusion or restriction."  *Liebel-Flarsheim Co. v. Medrad,*

*Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004).  At the same time, a construction that would exclude

one or more of the preferred embodiments from the scope of the claims "is rarely, if ever, correct." *Amgen, Inc. v. Hoechst Marion Roussel*, 314 F.3d 1313, 1349 (Fed. Cir. 2003).

Additionally, "the claims themselves provide substantial guidance as to the meaning of particular claim terms." *Phillips*, 415 F.3d at 1314.  "[T]he context in which a term is used in the asserted claim can be highly instructive." *Id.*  "Differences among claims can also be a useful guide in understanding the meaning of particular claim terms." *Id.*  "For example, the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Id.* at 1314-15.

Finally, the Court may rely on extrinsic evidence, such as dictionaries or expert testimony, to provide background on the technology at issue, to explain how an invention works, or to explain the meaning of a term as it would be understood by a person of ordinary skill in the art. *See Phillips*, 415 F.3d at 1317-18.  But extrinsic evidence cannot be used to contradict the intrinsic evidence. *Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1328 (Fed. Cir. 2008).

## III.  U.S. PATENT NOS. 5,715,314 AND 5,909,492

### A.  Technology Background

The '314 patent is directed to a computerized sales system that allows a user to shop over an online network and pay electronically.  As the Court is aware, the claimed system includes a virtual "shopping cart" feature that is now ubiquitous on e-commerce websites across the Internet.  The patented sales system includes a buyer computer for operation by a user who purchases products online.  The user selects the desired products and places them in a shopping cart, which is stored in a shopping cart database.  When ready to check out, the user initiates an electronic transaction to pay for the selected products.

The '492 patent is directed to additional features of the disclosed sales system.[3]  For example, the systems described in the '492 claims utilize "smart" hypertext statement documents, which allow the user to track past purchase transactions.

For the Court's convenience, the text of the asserted claims of the patents-in-suit, with the disputed terms shown in bold, is attached at Exhibit F.  Soverain's proposed constructions and citations in support of those construction are attached at Exhibit L.

**B.      Construction of Disputed Claim Terms**

**1.      "buyer computer for operation by a user"**

| Soverain's Proposal | Defendants' First Proposal | Defendants' Second Proposal |
|---|---|---|
| Term does not require construction and should be given its plain and ordinary meaning<br><br>*Alternatively:*<br>A computer for operation by a user desiring to buy products | A physical personal computer for home-use to be used by a user-buyer | ordinary meaning / no construction necessary |

This term appears in claims 34-36, 39, 50, 51, 84, 109, 110, 111, and 144 of the '314 patent, and claims 17, 18, 35, and 36 of the '492 patent.  The language in this term does not require construction.  In the alternative, Soverain proposes a straightforward construction based on the plain and ordinary meaning.

Defendants' First Proposal should be rejected because it amounts to an unwarranted rewriting of the claims.  There is no support in the intrinsic evidence for limiting the "buyer computer" to a "personal computer for home-use."  This would improperly exclude, for example, a business computer used at work.

Similarly, rewriting "user" as "user-buyer" is unwarranted, as it would improperly exclude, for example, a user operating the buyer computer on behalf of another.  Indeed, the '314

---

[3]   The '314 and '492 patents are related and share a common specification.  *See* Ex. D, '314 patent; Ex. E, '492 patent.

and '492 patents consistently distinguish the terms "user" and "buyer" throughout the

specification and claims.  *E.g*., c*ompare* Ex. D at col. 1, ll. 50-52 ("the invention provides a

network-based sales system that includes at least one buyer computer for operation by a *user*

desiring to buy a product") *with* col. 4, ll. 50-52 ("The products advertised by merchant computer

14 may be, for example, newspaper or newsletter articles available for purchase by *buyers*.").

By contrast, the term "buyer-user" is never used in the '314 and '492 patents.  Defendants' First

Proposal attempts to read this extraneous limitation into the claims, which only confuses, rather

than clarifies, the meaning of the recited term.  Nothing in the intrinsic evidence warrants

departing from the plain and ordinary meaning of "user" and "buyer" to make them synonymous.

### 2. "client computer for operation by a client user"

| Soverain's Proposal | Defendants' Proposal |
| --- | --- |
| Term does not require construction and should be given its plain and ordinary meaning<br><br>*Alternatively:*<br>A computer capable of requesting a service of another computer or computer system | Buyer computer operated by a user |

This term appears in claims 15, 16, 39, 40, 66, 68, 73, 74, 92, 95, 96, and 101 of the '492

patent.  The term has a plain and ordinary meaning that does not require construction.

Alternatively, Soverain proposes a construction based on the plain meaning of this term to a

person of ordinary skill in the art.

At the time the inventions were made, a person of ordinary skill would have understood

the term "client" in the context of the asserted claims to mean "a computer system or process that

requests a service of another computer system or process (a "server") using some kind of

protocol, and accepts the server's responses."  *See, e.g*., Ex. H, FOLDOC – Free On-Line

Dictionary of Computing, at http://foldoc.org/ (definition of "client" dated October 27, 1997).

Nothing in the intrinsic evidence supports Defendants' attempt to depart from the plain and ordinary meaning of "client" to equate it with "buyer."  Indeed, the '492 patent never uses these terms interchangeably, as the Defendants now ask the Court to do, but instead, consistently uses the term "client" in a broader context throughout the specification and claims.

### 3. "collection"

| Soverain's Proposal | Defendants' Proposal |
| --- | --- |
| Zero, one or more [products] | Two or more |

This term appears in claims 34-36, 39, 50, 51, 84, 109, 110, 111, and 144 of the '314 patent, and claims 17, 18, 35, and 36 of the '492 patent.  In *Amazon*, the Court adopted Soverain's proposed construction of "collection," and expressly rejected the construction of "two or more" that Defendants propose again here:

> Soverain contends that "collection" could mean zero, one, two, or more products. Although one claim limitation requires that payment be made for a "plurality of products," the claims do not require that the shopping cart always contain multiple, or any, products.  *See* '314 Patent, claim 34.  From this distinction the Court finds "collection" does not necessarily mean at least two, but can refer to zero, one, or more products.  Ex. A, *Amazon* D.I. 246 at 19-20.

Defendants urge the Court to adopt a construction that it has already considered and rejected.  As the Court recognized in *Amazon*, "the patentee acted as his own lexicographer and defined 'shopping cart' to mean 'a stored representation of a collection of products.'"  *Id*. at 19. But that definition does not mean that the shopping cart must always contain two or more products, as Defendants' construction would require.  *See id*. at 20.  Instead, the shopping cart described in the '314 and '492 patents may contain one product or no products at all.  *Id*. Understood in that context, the term "collection" means "zero, one or more," and should not limited to shopping carts with only "two or more" products, as the Court earlier ruled in *Amazon*. Defendants have not (and cannot) identify any flaw in the Court's reasoning that would require the Court to modify its prior construction.

7

### 4.  "network-based sales system"

| Soverain's Proposal | Defendants' First Proposal | Defendants' Second Proposal |
|---|---|---|
| This term appears only in the preamble of the asserted claims and is not limiting.<br><br>Therefore, it does not require construction. | A system that includes at least one buyer computer for operation by a user desiring to buy a product, at least one merchant computer, and at least one payment computer.  The buyer computer, the merchant computer, and the payment computer are interconnected by a computer network. | ordinary meaning / no construction necessary |

This term appears in the preamble of claims 34-36, 50, and 84 of the '314 patent, and claims 17 and 35 of the '492 patent.  The preamble of a claim is ordinarily not limiting.  The preamble should only be construed if "read in the context of the entire claim, [the preamble] recites limitations of the claim, or, if the claim preamble is 'necessary to give life, meaning, and vitality' to the claim[.]"  *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999).

Here, the preamble of the claims at issue recites "[a] network-based sales system." Following the preamble, each claim sets forth the required features of the claimed system.  The preamble in this instance merely introduces the general subject matter of the claims, and is not necessary to give life or meaning to them.

Defendants' First Proposal attempts to pack as many limitations into this one term as possible, disregarding the actual words used in this term and the features of the systems expressly recited in each asserted claim.  In this way, Defendants' First Proposal renders the language of the actual claim terms meaningless.  For example, claim 19 of the '492 patent requires a "payment computer," but asserted claims 17 and 35 do not.  Defendants' First Proposal impermissibly attempts to eliminate the distinctions recited in these different claims with a forced redrafting of the short, introductory term used in the preamble.

### 5.      "payment computer"

| Soverain's Proposal | Defendants' First Proposal | Defendants' Second Proposal |
|---|---|---|
| A computer processing payment information | Computer that accesses and debits buyer funds or credit used in payment transactions | Shopping cart computer |

This term appears in claim 40 of the '492 patent.  The Court considered the meaning of

"payment computer" in *Amazon*, and adopted Soverain's proposed construction of this term:

> The Court defines "payment computer" to mean "a computer processing payment
> information."  Although the parties agree that "payment computer" does not have
> an ordinary and customary meaning in the art, the term "payment" has an ordinary
> and customary meaning, and the Court has already construed the term
> "computer."  Accordingly, the Court is able to infer the phrase's meaning from
> the ordinary meaning of payment and the construed meaning of computer without
> importing limitations from the specification. . . .  Amazon's proposed
> construction, which cobbles together descriptions from the specification, requires
> the payment computer to "accept and verify payment by the buyer, and authorize
> purchase of products from the merchant."  Such a construction impermissibly
> reads in limitations from the specification.  Ex. A, *Amazon* D.I. 246 at 16-17.

Here, Defendants' First Proposal "cobbles together" terms found only in certain

embodiments disclosed in the specification, akin to the construction that the Court rejected in

*Amazon*.  Defendants' Second Proposal seeks to rewrite this straightforward term altogether by

replacing "payment computer" with "shopping cart computer."  The Court should reject both

proposed departures from its prior ruling.

### 6.      "payment message"

| Soverain's Proposal | Defendants' First Proposal | Defendants' Second Proposal |
|---|---|---|
| a message relating to a payment for one or more products | a message relating to a payment for one or more products, containing an authenticated user's payment information and sent to the buyer computer | A message enabling payment for one or more products |

This term appears in claims 34-36, 39, 50, 51, 84, 109, 110, 111, 134, and 144 of the '314

patent, and claims 17, 18, 35, and 36 of the '492 patent.  In *Amazon*, the Court adopted

Soverain's proposed construction:

Claim 1 of the '314 patent states, "A network based sales system, comprising: . . . a payment message to be sent to said payment computer that comprises a product identifier identifying said product." As described here, the payment message is not required to contain a cryptographic key. Claim 33 of the '314 patent also does not require a cryptographic key as part of the payment message[.] In claims 27 and 28, which are dependent on claims 19 and 27 respectively, the payment message includes a payment message authenticator based on a cryptographic key. Ex. A, *Amazon* D.I. 246 at 15.

Defendants' First Proposal, like the rejected proposal in *Amazon*, attempts to import limitations from certain preferred embodiments disclosed in the specification. As the Court pointed out in *Amazon*, some claims require authentication in connection with the payment message, while others do not. The claims asserted here do not. Similarly, Defendants' Second Proposal should be rejected because none of the asserted claims require the payment message to "enable" anything, contrary to Defendants' alternative proposed construction.

### 7. "plurality"

| Soverain's Proposal | Defendants' Proposal |
|---|---|
| Term does not require construction and should be given its plain and ordinary meaning | Two or more |

This term appears in claims 34-36, 39, 50, 51, 84, 109, 110, 111, and 144 of the '314 patent, and claims 17, 18, 35, and 36 of the '492 patent. The term has a plain and ordinary meaning that does not require construction. Also, this term appears in different contexts in the claims, and it is not clear in what context Defendants seek to construe the term. For example, Defendants separately ask the Court to construe the term "plurality of respective products," which is discussed in the next section below. For these reasons, a separate construction of this term, out of context, would be confusing and unhelpful to the trier of fact. *See Orion IP, LLC v. Staples, Inc.*, 406 F. Supp. 2d 717, 738 (E.D. Tex. 2005) (Davis, J.) (noting that although "every word used in a claim has meaning, not every word requires construction.").

**8.**     **"plurality of respective products / plurality of products [added to said/the shopping cart]"**

| Soverain's Proposal | Defendants' Proposal |
|---|---|
| product identifiers which are added to an instance of a shopping cart in the shopping cart database / [add] identifiers of respective products to an instance of a shopping cart | Two or more products, identified by two or more respective product identifiers |

This term appears in claims 34-36, 39, 50, 51, 84, 109, 110, 111, and 144 of the '314 patent, and claims 17, 18, 35, and 36 of the '492 patent.  Soverain's proposed construction incorporates the Court's earlier constructions in *Amazon* for the terms "plurality of products added" and "[add a] plurality of respective products to a shopping cart."  Ex. A, *Amazon* D.I. 246 at 20.  Defendants' proposal departs from the Court's prior constructions by reading in additional limitations that require "two or more products" to be "identified by two or more respective product identifiers."  This unduly restrictive construction is unwarranted for at least two reasons.

First, Defendants' proposal suggests that only one product identifier can be used to identify each product.  There is no support for such a limitation in the intrinsic evidence.  For example, a merchant may wish to offer a particular product at a regular price to some customers, and at discounted price to others.  The merchant may associate one product identifier with the regular price, and a different product identifier with the discounted price.  One of these product identifiers will be added to the shopping cart, depending on the price offered to the customer.  Nothing in the claims or specification of the '314 or '492 patents requires that only one product identifier may be associated with each product in order to practice the claimed inventions.

Second, Defendants' proposal suggests that the claims require each transaction to involve "two or more products."  As the Court held in *Newegg*, however, the system claims incorporating this term are infringed even when buyers purchase a single product, as long as the system is *capable* of receiving more than one request:

11

> As stated above in addressing infringement, "to infringe an apparatus claim, it is not necessary for an accused device actually to be performing the functions specified by the claim.  All that is required is that the device have the claimed structure, and that this structure in the device have the *capability* of functioning as described by the claim."  Ex. I, *Newegg* D.I. 434 at 17-18 (emphasis added, citation omitted); *see also id*. at 17-18.

Defendants' proposal is unduly limiting to the extent that it is intended to exclude from the scope

of the claims transactions involving only one product.

### 9. "shopping cart computer"

| Soverain's Proposal | Defendants' First Proposal | Defendants' Second Proposal |
|---|---|---|
| a computer processing data associated with one or more shopping carts | A computer that modifies the shopping carts in the shopping cart database, operated by the manager of a network sales system | A computer that modifies the shopping carts in the shopping cart database |

This term appears in claims 34-36, 39, 50, 51, 84, 109, 110, 111, and 144 of the '314

patent, and claims 17, 18, 35, and 36 of the '492 patent.  In *Amazon* and *Newegg*, the Court

adopted the parties' agreed construction of this term, which Soverain proposes here.  Ex. A,

*Amazon* D.I. 246 at 28;  Ex. C, *Newegg* D.I. 214 at 2.

Defendants' First Proposal should be rejected because it would confuse the trier of fact

by adding an unsupported limitation that the computer must be "operated by the manager of a

network sales system."  This is a term that has no clearly defined meaning in the context of the

'314 and '492 patents.  None of the asserted claims recite a "manager of a network sales

system."  And, as discussed above, the phrase "network-based sales system" appears only in the

non-limiting preamble of certain claims.  Accordingly, Defendants' First Proposal would not

only rewrite the claims to add a "manager" limitation, but would also restrict operation of the

shopping cart computer to such a manager.  Nothing in the claim language or other intrinsic

evidence justifies the addition of that limitation.  Moreover, without an antecedent basis for

"manager," Defendants' First Proposal would also potentially render these claims indefinite.

Defendants' Second Proposal should be rejected because it is also likely to confuse the trier of fact.  The claims already recite that "the shopping cart computer [is] a computer that modifies the stored representations of collections of products in the database."  Thus, Defendants' Second Proposal is unnecessarily redundant and circular in that it repeats several express limitations already found in the asserted claims.

### 10.   "shopping cart message"

| Soverain's Proposal | Defendants' Proposal |
|---|---|
| a message concerning a shopping cart | A message containing an authenticator based on a cryptographic key, whose authentication indicates that the user has authority to modify a shopping cart |

This term appears in claims 34-36, 39, 50, 51, 84, 109, 110, 111, and 144 of the '314 patent, and claims 17, 18, 35, and 36 of the '492 patent.  Soverain's proposed construction was adopted by the Court in *Amazon*, and is based on the plain and ordinary meaning.  Ex. A, *Amazon* D.I. 246 at 14.

Defendants' proposal attempts to incorporate a "cryptographic key" into the definition of this term, a construction that the Court earlier rejected in *Amazon*.  Ex. A, *Amazon* D.I. 246 at 14-16.  As the Court explained, where it is required that certain messages contain cryptographic key-based authenticators, the claims expressly recite that limitation.  In particular, the Court recognized that "[c]laim 34 of the '314 patent does not require shopping cart messages to include cryptographic keys."  *Id*. at 15.  Likewise, the term "shopping cart messages" is used in claims 17, 18, 35, and 36 of the '492 patent, "none of which state it includes a cryptographic key."  *Id*. Defendants' attempt to read in this limitation from certain dependant claims runs afoul of the fundamental principle of claim differentiation.  As in *Amazon*, the claims asserted here are not limited to "an authenticator based on a cryptographic key," and the Court should reject Defendants' renewed attempt to rewrite them.

### 11. "universal resource locator"

| Soverain's Proposal | Defendants' Proposal |
| --- | --- |
| The global address of documents and other resources on the Worldwide Web, also known as URL | Uniform resource locator (URL): An address for a resource on the Internet |

This term appears in claims 17 and 18 of the '492 patent. The principal difference between the parties' proposals is that Defendants construe the term broadly as any address for a resource on the Internet, while Soverain's proposal is narrower in that it is directed to resources specifically on the Worldwide Web. The parties disagree whether the term "universal resource locator" ("URL"), as used in the '492 patent, refers to the mid-1990s understanding of URL in the context of the Worldwide Web, or as a reference to something more generally associated with the pre-Web Internet, as Defendants now urge.

The Court should adopt Soverain's proposal because it is consistent with the use of the term URL throughout the intrinsic record and how that term would have been understood by a person of ordinary skill in the art at the time of the invention. Soverain's proposal clarifies that a URL is the address of a resource on the Worldwide Web. In other words, a URL is an address that a user could type into a Web browser to access the resource.

A person of ordinary skill in the art, reading the claims in the context of the specification, would understand the term as construed by Soverain. The Internet existed for many years before the Worldwide Web was invented. The specification explains that a URL is an example of a "link," a term associated with the Worldwide Web, but not with any other aspect of the Internet:

> The term "URL" as used the present application is an example of a "link," which is a pointer to another document or form (including multimedia documents, hypertext documents including other links, or audio/video documents).

Ex. E, col. 9, ll. 59-63. Likewise, Figures 5-14 of the '492 patent illustrates different aspects of the disclosed embodiments as seen through a Web browser.

The '639 patent also describes URLs as addresses for resources on the Worldwide Web, confirming that this is how a person of ordinary skill would have understood the term in the mid-1990s timeframe:

> For example, links may be visually displayed as words or phrases that may be underlined or displayed in a second color. Each link is directed to a web page by using a special name called a URL (Uniform Resource Locator).  URLs enable a Web browser to go directly to any file held on any Web server.  A user may also specify a known URL by writing it directly into the command line on a Web page to jump to another Web page.  Ex. J, '639 patent at col. 2, ll. 18-25.

Finally, the dictionary definition that Defendants rely on actually supports Soverain's proposed construction.  That dictionary defines URL as "an address for a resource on the Internet," but immediately adds that "URLs are used *by Web browsers* to locate Internet resources."  Ex. G at 6 (emphasis added).

## IV.    U.S. PATENT NO. 7,272,639

### A.    Technology Background

The '639 patent is directed to the control and monitoring of access to information on the Internet, and is applicable to processing service requests in a hypertext transfer protocol ("HTTP") environment, such as the World Wide Web.  HTTP is said to be "stateless," that is, it does not keep track of communications exchanged between a user's computer and a website's server ("web server") during a given session (*e.g.*, e-commerce shopping).  Accordingly, under HTTP, a web server cannot tell whether a series of communications from a client are part of the same session or different sessions.

The '639 patent discloses a method that allows a web server to recognize a series of inquiries (service requests) from the same client during an online session, and to control access to information without repeated authentication.  The claimed method is based on the use of a session identifier that allows the web server to recognize requests that belong to the same session

and to distinguish among the requests of different sessions.  This ability allows the web server to provide access to information resources that the user is authorized to access and to monitor the user's access.

### B.    Construction of Disputed Claim Terms

### 1.    "appending the stored session identifier to each of the subsequent distinct requests"

| Soverain's Proposal | Defendants' Proposal |
|---|---|
| tagging, adding, affixing or supplementing the stored session identifier to each of the subsequent distinct requests<br><br>Where "session identifier" means "a text string that identifies a session" | Tagging the stored session identifier to the address/URL of each of the subsequent distinct requests |

This term appears in claim 1, 10, 65, and 68 of the '639 patent.  In *Amazon*, the Court construed an analogous term in the asserted claims of U.S. Patent No. 5,708,780 ("the '780 patent") – the parent of the '639 patent.  Specifically, the Court construed the term "appending . . . [the session identifier] . . . as part of a . . . path name in a uniform resource locator" to mean "tagging, adding, affixing or supplementing [the session identifier] to the URL as part of a path name."  Ex. A, *Amazon* D.I. 246 at 6.  The Court's construction of "appending" to mean "tagging, adding, affixing or supplementing" is consistent with the plain and ordinary meaning of the term and the intrinsic record.  Soverain's proposed construction incorporates the Court's prior ruling in *Amazon*.

Defendants' proposal adds the limitation that "requests" must include an "address/URL" to which the session identifier is tagged.  That construction is contrary to the doctrine of claim differentiation.  Claim 35, which depends on claim 1, recites that the session identifier is appended to a path name.  Claim 36, which depends on claim 35, specifies that the path name is part of a link.  Finally, claim 38, which depends on claim 36 recites that the link "comprises a

16

uniform resource locator."  Accordingly, Defendants' proposal, which would import the URL

limitation from the dependent claims into independent claim 1, should be rejected.

> ### 2. "a service request to which a session identifier stored at the client has been appended by the client"

| Soverain's Proposal | Defendants' Proposal |
| --- | --- |
| Term does not require construction and should be given its plain and ordinary meaning<br><br>*Alternatively:*<br>A service request with which the client includes a session identifier stored at the client<br><br>Where "session" means "a series of requests and responses to perform a complete task or set of tasks between a client and a server system"<br><br>Where "session identifier" means "a text string that identifies a session" | A service request that includes an address/URL to which a session identifier stored at the client has been tagged by the client |

This term appears in claim 78 and 79 of the '639 patent.  The term has a plain and

ordinary meaning that does not require construction.  Alternatively, Soverain proposes a

construction of this term based on the plain and ordinary meaning, and in light of the Court's

earlier construction in *Amazon* of the terms "session" and "session identifier" in the claims of the

'780 patent.  Ex. A, *Amazon* D.I. 246 at 6.

As discussed in Section IV.B.1, where the claims of the '639 patent require that

"requests" include an "address/URL," they explicitly recite that limitation.  The Court should

reject Defendants' proposal because it requires the "service request" in claim 78 to "include[] an

address/URL," even though that limitation is found nowhere in the asserted claims.  Moreover,

Defendants' proposal improperly limits "appended" to mean "tagged."  As discussed in Section

IV.B.1, the Court determined in *Amazon* that "appending" also means "adding, affixing or

supplementing," not just "tagging."

### 3.    "session identifier"

| Soverain's Proposal | Defendants' Proposal |
|---|---|
| a text string that identifies a session | A text string that identifies a session and contains sufficient information to validate that a request is authorized |

This term appears in claims 1, 10, 65, 68, 78, and 79 of the '639 patent.  The Court adopted Soverain's proposed construction of this term in *Amazon*, and expressly rejected a construction that would have required the "session identifier" to include authorization information, as Defendants propose here.  Ex. A, *Amazon* D.I. 246 at 7-8.  As the Court explained, such a construction is "too narrow and improperly import[s] many of the limitations from the specifications and preferred embodiments into the claim language." *Id*.  There is no reason for the Court to modify its prior construction of this term.

### 4.    "session identifier appended to the service request / appended session identifier"

| Soverain's Proposal | Defendants' Proposal |
|---|---|
| Term does not require construction and should be given its plain and ordinary meaning<br><br>*Alternatively:*<br>Session identifier included with the service request<br><br>Where "session" means "a series of requests and responses to perform a complete task or set of tasks between a client and a server system"<br><br>Where "session identifier" means "a text string that identifies a session" | Session identifier tagged to the address/URL of the service request |

This term appears in claim 78 and 79 of the '639 patent.  The term has a plain and ordinary meaning that does not require construction.  Alternatively, Soverain proposes a construction based on the plain and ordinary meaning if the Court believes it would assist the trier of fact.

Defendants' proposal attempts to add the limitation that service requests must include an "address/URL," and should be rejected for the reasons discussed in Sections IV.B.1 and IV.B.2 above.  Likewise, Defendants' proposal improperly limits "appended" to mean "tagged."  As discussed in Section IV.B.1, "appending" can also mean "adding, affixing or supplementing."

### 5.    "stored session identifier"

| Soverain's Proposal | Defendants' First Proposal | Defendants' Second Proposal | Defendants' Third Proposal |
|---|---|---|---|
| a stored text string that identifies a session<br><br>Where "session" means "a series of requests and responses to perform a complete task or set of tasks between a client and a server system" | A session identifier that is recorded in computer storage without other information, excluding storage in standard browser formats common to the Web on or before June 7, 1995 | A session identifier that is recorded by a special browser without other information.<br><br>The special browser may not implement standard browser formats common to the Web on or before June 7, 1995. | ordinary meaning / no construction necessary |

This term appears in claim 1, 10, 65, and 68 of the '639 patent.  Soverain's construction is based on the plain and ordinary meaning, and incorporates the Court's earlier construction of "session identifier" in *Amazon*.  *Amazon* D.I. 246, Ex. A at 7.

Defendants First and Second Proposals attempt to read several limitations into the single word "stored," including:  (1) the location where the session identifier is stored; (2) whether other information is stored together with the session identifier; and (3) the means and format by which the storing is accomplished.  Defendants' overly restrictive constructions should be rejected because they conflict with the bedrock principle that limitations should not be read into the claims, *Phillips*, 415 F.3d at 1323, and also because they have no support in the claim language, specification, or prosecution history.  *See id.* at 1324.

Defendants' first limitation requires the session identifier to be "recorded in computer storage."  A person of ordinary skill in the art would already know what "stored" means.  The

phrase "recorded in computer storage" clarifies nothing and raises the additional question of what "computer storage" may or may not be.  For example, is a flash drive "computer storage?"

Second, Defendants attempt to limit the construction of the word "stored" by requiring that the session identifier be stored "without other information."  This limitation does not clarify the meaning of the disputed term.  Instead, it adds the unsupported requirement that nothing can be stored together with the session identifier.  *See SRAM Corp. v. AD-II Eng'g, Inc.*, 465 F.3d 1351, 1359 (Fed. Cir. 2006).  That limitation is inconsistent with the specification, which expressly discloses at least one embodiment in which the client runs a browser and must store the session identifier together with at least the browser program – *i.e*., "with other information," not "without."  Ex. J, '639 patent, col. 7, ll. 22-26; see also Ex. K, '780 patent, claims 58, 111.

Defendants' third limitation, likewise, does not define the word "stored," but instead attempts to restrict the claims to browsers available only after June 7, 1995 – the priority date for the '639 patent application.  Defendants' attempt to rewrite the claims in this way should also be rejected.  *SRAM*, 465 F.3d at 1359.  Defendants cite to a portion of the specification that distinguishes "early browsers" from modern, "cookie compatible browsers."  Ex. G at 9 (quoting Ex. J, '639 patent, col. 4, ll. 22-29).  Because early web browsers were not capable of storing a "session identifier," the specification explains that one embodiment of the invention requires the client browser to be modified.  The specification also explains, however, that the invention may be implemented with cookie compatible browsers without modification.  Nothing in the cited part of the specification supports limiting the claims to browsers existing after a certain date.  Indeed, the specification emphasizes the flexibility of the disclosed invention.

Defendants also cite the following statement during prosecution:

In addition, Freeman-Benson, at the time of its publication, worked with "all existing WWW browsers."  Such browsers as existed at the time would not

20

support Applicants' claimed invention, which as of the priority date, required a modified browser.  Of course, "modern" browsers which support cookies are such "modified" browsers.  Ex. G at 9.

Contrary to Defendants' contentions, this statement is not a "clear and unmistakable" disclaimer regarding the applicability of the invention to browsers existing prior to a specific date.  *See Voda v. Cordis Corp.*, 536 F.3d 1311, 1321 (Fed. Cir. 2008).  First, the statement refers to browsers that "existed at the time" of the Freeman-Benson publication – *i.e.*, May 1994, and not the June 7, 1995 priority date of the '639 patent application.  Second, the statement merely refers to the fact, discussed above, that some early browsers would have to be modified in order to support the invention.  But applicants never disclaimed the use of pre-June 7, 1995 browsers, as Defendants' proposed construction suggests.

### 6. "validating the session identifier appended to the service request"

| Soverain's Proposal | Defendants' Proposal |
|---|---|
| determining the validity of the appended session identifier<br><br>Where "session" means "a series of requests and responses to perform a complete task or set of tasks between a client and a server system"<br><br>Where "session identifier" means "a text string that identifies a session" | Verifying that the appended session identifier received from the client is the session identifier previously returned to that client |

This term appears in claim 78 and 79 of the '639 patent.  Soverain's proposal is consistent with the intrinsic record, the plain and ordinary meaning of the term, and the construction of "validating, at the server system, the appended session identifier" adopted by the Court in *Newegg*.  *See Newegg* D.I. 214, Ex. C at 4.  Defendants' proposal should be rejected because it impermissibly imports limitations and excludes a preferred embodiment disclosed in the specification.  *Amgen*, 314 F.3d 1313, 1349 (Fed. Cir. 2003).

First, Defendants attempt to construe the "validating" step as limited to confirming whether the session identifier is the one originally sent *from* the server *to* the client.  However, claim 78 does not require that the server system generate the session identifier.  Indeed, the claim does not include any limitation regarding the origin of the session identifier.  Defendants' proposed construction is, therefore, inconsistent with the plain language of the claim.

Second, Defendants' proposal excludes a preferred embodiment in which the "validating" step includes the following checks:

> validation includes the following list of checks: (1) the SID's digital signature is compared against the digital signature computed from the remaining items in the SID and the user IP address using the secret key shared by the authentication and content servers; (2) the domain field of the SID is checked to verify that it is within the domain authorized; and (3) the EXP field of the SID is checked to verify that it is later than the current time.  Ex. J, col. 6, ll. 9-16.

All three validation checks disclosed in this embodiment go beyond merely "verifying" that the session identifier is identical to one previously issued by the server.  Thus, Defendants' proposal should be rejected for the additional reason that it excludes this preferred embodiment.

## V.     CONCLUSION

For the foregoing reasons, Soverain respectfully requests that the Court adopt Soverain's proposed construction for each of the disputed terms and phrases.

Dated:  October 8, 2010                        Respectfully submitted,


*/s/ Michael C. Smith*_____
   Michael C. Smith (Texas Bar. No. 18650410)
   michaelsmith@siebman.com
SIEBMAN, BURG, PHILLIPS & SMITH, LLP
113 East Austin Street
P.O. Box 1556
Marshall, Texas, 75670
Telephone: (903) 938-8900
Facsimile: (972) 767-4620


   Edward J. DeFranco
   eddefranco@quinnemanuel.com
   James M. Glass
   jimglass@quinnemanuel.com
   Anastasia M. Fernands
   anastasiafernands@quinnemanuel.com
   Carlos A. Rodriguez
   carlosrodriguez@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100


   David A. Nelson
   davenelson@quinnemanuel.com
   Michael Harte
   mikeharte@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
500 West Madison, Suite 2450
Chicago, Illinois  60661
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

*Attorneys for Plaintiff Soverain Software LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) this 8th day of October, 2010. Any other counsel of record will be served by facsimile transmission and/or first class mail.

*/s/ Michael C. Smith*_____
Michael C. Smith