# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | |
|---|---|
| Soverain Software LLC, | |
| Plaintiff, | |
| v. | Civil Action No.  6:09-cv-00274-LED |
| J.C. Penney Corporation, Inc., Amway Corp., Avon Products, Inc., Bidz.com, Inc., HSN, Inc., HSN Improvements, LLC, Cornerstone Brands, Inc., Ballard Designs, Inc., Garnet Hill, Inc., Smith & Noble, LLC, The Territory Ahead, Inc., QVC, Inc., Shutterfly, Inc., Victoria's Secret Stores Brand Management, Inc., Victoria's Secret Direct Brand Management, LLC, VistaPrint, Ltd., and VistaPrint USA, Inc. | |
| Defendants. | |

## SOVERAIN SOFTWARE LLC'S MOTIONS *IN LIMINE*

Plaintiff Soverain Software LLC ("Soverain") hereby moves *in limine* for an order concerning the matters set forth below.

1.      **Failure to Disclose Expert Opinions:**  Defendants' experts should be precluded from testifying regarding infringement and validity.  Pursuant to Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, an expert report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them."  As a practical matter, the basis and reasons for an expert's opinions are often clarified during that expert's deposition testimony.  In this case, however, Dr. Keller and Dr. Cromarty were unable or unwilling to clarify or explain their opinions at their depositions.  Both experts avoided answering even the most straightforward questions regarding their opinions or the basis for those opinions.  On certain occasions, they testified that they would need to review all of the materials in their reports and the reports of Soverain's experts before being able to answer any questions.  On other occasions, they merely read directly from their expert reports.  And at other times, they deliberately ran the clock out by spending an extensive amount of time reviewing materials, after which they were still unable to answer the pending question.  Allowing Drs. Keller and Cromarty to testify would permit Defendants to conduct this trial by ambush, and would make a mockery of the discovery rules that require full disclosure of an expert's opinions and the basis for those opinions.  The following examples illustrate the tactics that Drs. Keller and Cromarty employed throughout their depositions in an attempt to thwart Soverain's attempts to obtain full and accurate discovery.

- On numerous occasions, Dr. Keller was asked to explain the basis for his non-infringement opinions.  Dr. Keller stated that he could not do so without first reviewing his entire expert report, all appendices and the materials cited within the report, as well as the expert report of Soverain's expert, Dr. Grimes, and all of the appendices and references that Dr. Grimes had cited.  (*see* Keller CD slide 11, "Keller 10"; slide 12,

"Keller 11"; slide 13, "Keller 12"; slide 15, "Keller 14"; slide 17, "Keller 16"; slide 18, "Keller 17"; slide 23, "Keller 22").[1]

- Similarly, Dr. Keller refused to explain his opinions regarding infringement under the doctrine of equivalents.  On at least two occasions, Dr. Keller was asked to explain his opinion regarding insubstantial differences between the claim term and Defendants' accused systems.  Dr. Keller stated that to answer those questions he would need all his reports, appendices, and cited material, Dr. Grimes's report, appendices, and cited material, and the expert report and appendices submitted by Soverain's expert on validity, Dr. Shamos.  (*see* Keller CD slide 14, "Keller 13"; slide 16, "Keller 15").

- Dr. Keller also refused to answer Soverain's questions regarding the basis for his invalidity opinions.  In response to a question regarding the motivation to combine two references, Dr. Keller spent approximately forty minutes reviewing his claim charts.  At the end of that time, Dr. Keller stated that he needed to review more information before he could answer the question.  (*See* Keller CD slide 19, "Keller 18").

- Dr. Keller was unable to answer questions regarding his invalidity opinion on enablement (*see* Keller CD slide 20, "Keller 19"), his claim chart regarding the Netmarket system (*see* Keller CD slide 21, "Keller 20"), his opinions regarding the Future Fantasy Bookstore system (*see* Keller CD slide 6, "Keller 5"), and how he determined whether there was a reason to combine certain references as part of his obviousness analysis (*see* Keller CD slide 3, "Keller 2").

- Dr. Keller refused to explain his understanding of "hindsight" as used in his expert report (*see* Keller CD slide 4, "Keller 3"), how customers purchase products from each of the Defendants' websites (*see* Keller CD slide 7, "Keller 6"), or whether he understands that the Defendants are in the retail business.  (*see* Keller CD slide 8, "Keller 7").

Perhaps most revealing is that Dr. Keller often looked to Defendants' counsel for confirmation that his evasive and unresponsive answers were acceptable to them, as shown in deposition clips Keller 6 and 7.  Indeed, Defendants' counsel often made improper speaking objections that reinforced Dr. Keller's practice of reading his report into the record without providing any further explanation for his opinions.  As shown at the end of clip Keller 2, Defendants' counsel not only approved of Dr. Keller's refusal to further explain his opinion

---

[1]   Attached at Exhibit 1 are excerpts from Dr. Keller's deposition transcript accompanied by a chart that correlates specific portions of the transcript to each Keller clip on the Keller CD. A similar chart is provided at Exhibit 2 along with excerpts from Dr. Cromarty's deposition transcript.

beyond what was expressly set forth in his report, but essentially testified on behalf of Dr. Keller

to say that he had purportedly answered the question.  *See also* Ex. 1, Keller Dep. Tr. 100:13-25.

At his deposition, Dr. Cromarty was similarly unable or unwilling to explain his opinions

in response to even the most basic questions.

- Dr. Cromarty refused to give straightforward answers to questions concerning his understanding of what a website is (*see* Cromarty CD slide 9, "Cromarty 8"; slide 10, "Cromarty 9"), how many steps or limitations are contained within claim 1 of the '639 patent (*see* Cromarty CD slide 7, "Cromarty 6"), what construction of the term "session identifier" he used in his analysis, (*see* Cromarty CD slide 11, "Cromarty 10"), his understanding of what a session is (*see* Cromarty CD slide 12, "Cromarty 11"), his understanding of what "cookies" are (*see* Cromarty CD slide 21, "Cromarty 20") and the difference between state and session (*see* Cromarty CD slide 27, "Cromarty 26").  *See also* (*see* Cromarty CD *slid*e 15, "Cromarty 14"; slide 16, "Cromarty 15"; slide 22, "Cromarty 21").

- Dr. Cromarty could not explain his non-infringement or invalidity opinions without reading entire sections of his report into the record.  For example, when Dr. Cromarty was asked whether a certain accused session identifier contained enough information to be validated, he stated that he could not provide a complete answer without reviewing Dr. Grimes's report in its entirety.  (*See* Cromarty CD slide 17, "Cromarty 16").  Dr. Cromarty was also asked about the session identifier in the Avon.com system.  In response, Dr. Cromarty read certain sections of his report into the record, but otherwise, did not answer.  (*See* Cromarty CD slide 25, "Cromarty 24").  Similarly, when asked about his opinion concerning whether Defendants' systems receive client service requests, Dr. Cromarty again read certain sections of his report into the record.  (*See* Cromarty CD slide 24, "Cromarty 23").

- Dr. Cromarty confirmed that he apparently has other opinions regarding non-infringement for each Defendant that are not disclosed in his expert report.  But he was unable to explain those opinions without conducting an analysis of Dr. Grimes's report at the deposition.  Moreover, he contended that he could not reveal all his opinions because they are purportedly protected by work product.  (*See* Cromarty CD slide 26, "Cromarty 25").

- Dr. Cromarty's testimony about his invalidity opinion was equally evasive.  Dr. Cromarty refused to identify or explain any opinions beyond what was explicitly set forth in his report.  (*See* Cromarty CD slide 28, "Cromarty 27").  For example, when Dr. Cromarty was asked to explain one of his opinions, he asked for the underlying reference document and then proceeded to read his claim chart and entire sections of the reference into the record.  (*See* Cromarty CD slide 18, "Cromarty 17").  When asked about his opinion concerning claim 78 of the '639 patent, Dr. Cromarty stated that he would need to review Dr. Shamos's report to provide a complete answer to the question, and then again

proceeded to read his claim chart and the underlying reference into the record.  (*See* Cromarty CD slide 19, "Cromarty 18"; slide 20, "Cromarty 19").

- When Dr. Cromarty was asked to identify the references that in combination with the Appletalk reference that he believes to invalidate the '639 patent, he stated that he may have some notes on additional combinations that he did not disclose in his report, but because he did not bring his notes with him, he was unable to identify them or explain his opinion about those references.  (*See* Cromarty CD slide 12, "Cromarty 13").

- When Dr. Cromarty was asked whether he looked for any prior art in connection with his work on this case, Defendants' counsel interposed a work product objection.  (*See* Cromarty CD slide 5, "Cromarty 4"; slide 6, "Cromarty 5").  Likewise, Dr. Cromarty refused to confirm what prior art references he intends to testify about at trial on the grounds of work product.  (*See* Cromarty CD slide 13, "Cromarty 12").

The testimony of Defendants' experts reflects a purposeful strategy to withhold discovery from Soverain.  As discussed above, the tactics that Defendants' experts employed to avoid answering questions and to waste time, apparently with counsels' approval, pervade every aspect of their deposition testimony.  Having blatantly flaunted the requirements of Rule 26, Drs. Keller and Cromarty should be precluded from testifying at trial.

2. **Claim Construction:**  Defendants should be precluded from offering any evidence, testimony, or arguments that are inconsistent with the Court's January 13, 2011 Claim Construction Order in this case or the Court's claim construction orders in the *Amazon* and *Newegg* cases.  *Cytologix Corp. v. Ventana Med. Sys., Inc.,* 424 F.3d 1168, 1172 (Fed. Cir. 2005); *see also Cordis Corp. v. Boston Scientific Corp.,* 561 F.3d 1319, 1337-38 (Fed. Cir. 2009).  Claim construction is the exclusive province of the Court.  Defendants should not be allowed to reinterpret or supplement the Court's constructions with their own definitions of claim terms.

In this case, for example, Defendants may argue that single-item transactions do not infringe the asserted shopping cart claims, and therefore, those sales should be excluded from the analysis of damages.  *See* Ex. 3.  This argument ignores the Court's ruling on exactly the same issue in the *Newegg* case with respect to claims 35 and 51 of the '314 patent and claim 17 of the

4

'492 patent.  As the Court held, the shopping cart claims asserted in *Newegg* are directed to systems that are not limited to single item transactions.  Instead, the claims merely recite that the system is "programmed" to accept multiple items.  As such, the claims are properly construed to encompass systems that have the ***capability*** to accept multiple items, regardless of whether the system is actually used to purchase multiple items each time.  *See Soverain Software LLC, v. Newegg, Inc.*, No. 6:07-CV-511, 2010 U.S. Dist. LEXIS 89268, *33 (E.D. Tex. August 11, 2010).  Defendants did not challenge the Court's construction of "programmed" during the claim construction proceedings in this case.  They should not be allowed to bypass the Court's earlier ruling by asking the jury to reach a different conclusion at trial.

Similarly, Defendants' technical expert, Dr. Cromarty, reinterprets the Court's construction of the term "session identifier" in connection with his non-infringement opinion concerning U.S. Patent No. 7,272,639 ("the '639 patent").  In its January 13, 2011 Order, the Court construed "session identifier" to mean "a text string that identifies a session and contains sufficient information to validate that a request is authorized."  Dkt. No. 332 at 31.  Dr. Cromarty, however, reads in additional limitations to the Court's construction of this term in an attempt to support his opinions on non-infringement.  *See* Ex. 4.  This additional "construction" of the Court's construction impermissibly usurps the Court's role of construing the asserted claims as a matter of law.  It is also likely to confuse the jury if Dr. Cromarty is permitted to testify concerning his opinions as to the meaning of this term that are inconsistent with the Court's claim construction order.  *See* Fed. R. Evid. 402, 403.

Likewise, Dr. Cromarty relies on his own construction of the terms "client," "hosts," "server," and "validating."  Defendants did not ask the Court to construe these terms.  Instead, Dr. Cromarty proffers his own construction in connection with his opinions on non-infringement.

Dr. Cromarty attempts to limit the plain meaning of these terms by reading in features of the preferred embodiments disclosed in the specification of the '639 patent in a manner that is flatly inconsistent with their plain and ordinary meaning.  *See* Ex. 4.  Again, Dr. Cromarty's opinions on claim construction are impermissible and will only serve to confuse the jury.

> **3.**     **Potential Design Around Alternatives:**  Defendants should be precluded from

referring to any e-commerce software product, website, system, or method as an available "non-infringing alternative" in the absence of admissible evidence to show that any such proposed alternative was ***available*** at the time of the hypothetical negotiation, was ***acceptable,*** and was a ***non-infringing*** alternative.  *See* Fed. R. Evid. 104(a), 402, 403.  Any such reference would be irrelevant and likely to confuse the jury.  *See Mars, Inc. v. Coin Acceptors, Inc.,* 527 F.3d 1359, 1372-73 (Fed. Cir. 2008) *modified on unrelated grounds,* 557 F.3d 1377 (Fed. Cir. 2009).

> ***First,*** Defendants should be precluded from referring to any proposed alternative that was

not identified in their experts' reports.  An expert report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them."  Fed. R. Civ. P. 26(a)(2).  If Defendants did not disclose a proposed alternative in their expert reports, Defendants' experts should be precluded from testifying about such proposed alternatives at trial.

> ***Second,*** Defendants' experts should be precluded from testifying about alternatives that

are not non-infringing.  Soverain understands that Defendants intend to offer testimony or evidence that the Newegg system (which was the subject of the *Soverain Software LLC v. CDW Corp.,* Case No. 6:07-CV-511 litigation) is an acceptable, non-infringing alternative to the patents-in-suit.  Following a trial on the merits, however, this Court entered judgment that the Newegg system infringes three Soverain patents – the same patents that are at issue in this case. Consequently, Defendants cannot rely on the Newegg system as an example of a ***non-infringing***

alternative.  Furthermore, Defendants must demonstrate that all of their purported alternatives to the patents-in-suit do not infringe Soverain's patents.  Without such evidence, information about that alternative is not relevant and should not be considered by the jury.

*Third,* Defendants should be precluded from testifying about alternatives that were not available at the time of the hypothetical negotiation.  An acceptable non-infringing alternative cannot be technology available today; the technology must have been available at the time of the Defendants' first infringing use of Soverain's patented technology.  *See Laserdynamics, Inc. v. Quanta Computer, Inc.,* No. 2:06-CV-348, 2011 U.S. Dist. LEXIS 5422, *8 (E.D. Tex. Jan. 20, 2011); *Grain Processing Corp. v. Am. Maize- Prods. Co*., 185 F.3d 1341, 1353 (Fed. Cir. 1999).

*Finally*, Defendants must show that the alternative technology was "acceptable," that is, it had all the advantages of the patented technology.  *See DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1310 (Fed. Cir. 2006).  Defendants' experts, however, do not even attempt to make such as showing.  At most, Defendant's experts make general, conclusory assertions regarding the alleged acceptability to customers and retailers of their proposed alternatives without any evidentiary basis, such as surveys, comparative testing, or other evidence.  Without some basis to establish the acceptability of the alternative technology at the time of the hypothetical negotiation, Defendants' proposed alternatives, and any information about them, are irrelevant, unfairly prejudicial, and should not be admitted at trial.

4.     **Standing:**  Defendants should be precluded from presenting evidence and making arguments or statements that Soverain does not rightfully own the patents-in-suit.  Soverain's Complaint adequately alleges, *inter alia*, that it "is the owner of all right, title and interest in" the '314, '492, and '639 patents, and Soverain's recording of the respective assignments for these patents creates a presumption that each assignment is valid.  *See SiRF Tech., Inc. v. ITC*, 601

F.3d 1319, 1328-29.  Defendants have attempted to rebut that presumption by contesting

Soverain's ownership in their Motion to Dismiss for Lack of Subject Matter Jurisdiction.  (*See*

Dkt. 385).  Defendants' motion, once resolved, will put this issue to rest.

This Court, and not the jury, should resolve the jurisdictional issue of standing that

Defendants have raised in their motion.  The Federal Circuit, in *DDB Techs., LLC v. MLB*

*Advanced Media, L.P.*, 517 F.3d 1284 (Fed. Cir. 2008), recently held that a jury trial is ***not***

***required*** to determine the jurisdictional issue of standing if the "jurisdictional facts and facts

underlying the substantive claim" are not sufficiently "intertwined."  *Id.* at 1291.

The same is true here.  Defendants' motion does not commingle jurisdictional facts and

facts underlying the substantive claims and defenses at issue between the parties that will go to

trial.  Defendants' challenge to Soverain's ownership of the patents-in-suit turns on the single

issue of conception, a question of law.  *See Invitrogen Corp. v. Clontech Laboratories, Inc.*, 429

F.3d 1052, 1063, (Fed. Cir. 2005).  And to the extent conception is based on subsidiary factual

findings, they are not intertwined with the factual underpinnings on the merits of infringement,

validity, or damages.  Accordingly, the Court should preclude Defendants from raising the issue

of standing at trial.  Doing so will significantly reduce the likelihood of jury confusion over a

purely legal issue that is unconnected to any other issues that the jury will decide.

5.      **Acquisition of the Patents-in-Suit:**  Evidence, statements, or arguments relating

to the amount that Soverain paid to acquire the patents-in-suit and the Transact product line at a

U.S. Bankruptcy Court auction should be excluded.  *See* Fed. R. Evid. 402, 403.  The amount

paid in the Bankruptcy Court auction, occurring years after the hypothetical negotiation between

Soverain (in the form of Open Market, Inc.) and any Defendant, is not relevant to a *Georgia-*

*Pacific* reasonable royalty analysis.  *See State Contracting & Eng'g Corp. v. Condotte Am., Inc.*,

346 F.3d 1057, 1072-73 (Fed. Cir. 2003).  Further, any arguable relevance of such evidence is substantially outweighed by the risks of misleading the jury, confusing the issues, and unfairly prejudicing Soverain.  *See Alpex Computer Corp. v. Nintendo Co.*, 34 U.S.P.Q.2d 1167 1204-05 (S.D.N.Y. Dec. 5, 1994), *overruled on other grounds*, 102 F.3d 1214 (Fed. Cir. 1996).

In particular, Soverain understands that Defendants intend to move *in limine* to preclude Soverain from referring to the amounts paid to Soverain for licenses in settlement of litigation after the bankruptcy.  Defendants should not be permitted to paint an incomplete and misleading picture for the jury in which they suggest that the patents-in-suit are worth no more than the bankruptcy-sale price, when subsequent licenses – the value of which Defendants are attempting to exclude – and the opinions of Defendants' damages expert belie that argument.

**6.**     **Notice of Infringement:**  Defendants should not be permitted to tell the jury why Soverain has not sought damages for infringement that occurred before the filing of the Complaint.  *See* Fed. R. Evid. 402, 403.  This information is not relevant and could confuse the jury into believing that Defendants did not infringe Soverain's patents before the commencement of this lawsuit.  Indeed, the jury need only know when the damages period begins; not the legal reason why Soverain's damages for infringement are calculated from that date.

**7.**     **Indirect Infringement:**  Defendants should be precluded from arguing that indirect infringement is any less culpable than direct infringement.  The Patent Act proscribes conduct that "actively induces" another to infringe a patent.  35 U.S.C. § 271(b).  And the Federal Circuit has instructed that "[a] party that induces or contributes to infringement is ***jointly and severally liable*** with the direct infringer for all general damages." *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1361 (Fed. Cir. 2001) (emphasis added).  Here, Soverain has alleged two alternative theories of infringement – *i.e.*, Defendants

9

directly infringe the patents-in-suit, and Defendants actively induce their customers to infringe. Thus, Defendants are jointly and severally liable for their customers' direct infringement of the patents-in-suit to the extent they induce that infringement.

Nor should Defendants be permitted to argue or suggest that Soverain is likely to sue or seek damages from customers who directly infringe the asserted claims by using Defendants' websites or any other e-commerce websites. Soverain has never sought damages from customers for infringing uses of the patents-in-suit. Moreover, Soverain cannot, as a matter of law, recover damages from Defendants' customers if it receives full compensation for the infringement from Defendants in this case. *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 696 (Fed. Cir. 1988).

**8.    Patentable Subject Matter:**  Defendants should be precluded from introducing evidence, testimony, or arguments that any claims of the patents-in-suit are invalid under 35 U.S.C. § 101 for not being directed to patentable subject matter.  Defendants waited to raise this argument until the eve of trial in an April 4, 2011 e-mail to Soverain—more than a month after the close of discovery.  The sum total of support for their argument is a single sentence that "the positions articulated by Soverain's experts at their deposition could result in a broad enough reading of the patent claims, such that the they are invalid under Section 101/Bilski."  Ex. 8. Notably missing from Defendants' e-mail is any identification of the deposition testimony that they allude to, let alone the purported "positions" taken by Soverain's experts that Defendants contend "could result" in an invalidity issue.  These allusions fall far short of Defendants' obligation to put Soverain on fair notice of what it must defend against at trial.

To the extent Defendants contend that they raised the issue of patentable subject matter in their February 26, 2010 Invalidity Contentions, those contentions did nothing more than set forth general averments that the asserted method claims are invalid under 35 U.S.C. § 101 "because

they are not tied to a particular machine and they do not transform any article into a different

state or thing."  First, Defendants' contentions were expressly limited to the asserted method

claims and did not include the system claims, as Defendants now contend.  Second, Defendants'

contentions are premised on an incorrect legal standard in light of the Supreme Court's decision

in *Bilski*, overturning the Federal Circuit's adoption of the "machine or transformation" test as

the exclusive standard for patentable subject matter.  *In re Bilski*, 130 S.Ct. 3218 (2010).  Having

withheld the bases for their contentions for more than a year, Defendants should be precluded

from completely overhauling their arguments now.

     **9.**    **Obviousness:**  Defendants should be precluded from offering any opinions that

the asserted claims of the patents-in-suit are obvious under 35 U.S.C. § 103 because Defendants'

experts, Drs. Keller and Cromarty, did not conduct the required obviousness analysis under

*Graham v. John Deere Co. of Kansas City,* 383 U.S. 1, 17-18 (1966).  In particular, Drs. Keller

and Cromarty failed to identify a reason why a person of ordinary skill in the art would have

combined the prior art references to arrive at the claimed invention, or to address in any

meaningful way secondary indicia of non-obviousness.  In most instances, Defendants' experts

merely offer the conclusory opinion that certain prior art, in combination with one or more other

unidentified references, allegedly renders the asserted claims obvious.  This failure to identify

with any particularity the alleged combinations on which Defendants' experts base their opinions

does not even come close to the required showing to establish a *prima facie* case of obviousness.

Likewise, even when Defendants' experts identify a combination of particular prior art, they

offer no explanation why a person of ordinary skill in the art would have actually made the

combination at the time of the inventions.  Instead, their opinions are based on impermissible

hindsight in which the recited elements of the asserted claims are used as a roadmap in an

attempt to piece together disparate teachings from the prior art.  Such generalized contentions and impermissible hindsight analyses will only serve to confuse the jury as to the correct four-factor analysis and will unfairly prejudice them by suggesting that such bare-bones contentions may be sufficient to establish obviousness.

For example, Dr. Keller offers no explanation why a person of ordinary skill in the art would have been motivated to substitute any particular missing elements from any particular prior art reference in order to arrive at the combinations of the asserted claims.  *See* Ex. 5, Keller Invalidity Report at ¶¶85-89; 97-112.  Instead, Dr. Keller states merely that "[d]uring the 1994 time frame, the Internet was undergoing explosive growth.  Many companies were racing to have a presence on the web and to sell products on the web."  *See id*. at ¶¶ 85-88, ¶¶ 110-112.  Dr. Keller then states that "[f]or better customer service, one of ordinary skill in the art in the 1994 timeframe who was creating a electronic commerce system would have [sic] motivated to combine the concepts in this network-based sales system that existed before the web with web technology, so as to provide better customer service with fewer customer service calls."  *Id.*

The purported "motivation" identified by Dr. Keller is, at most, a statement of a problem to be solved.  However, "knowledge of a problem and motivation to solve it are entirely different from motivation to combine particular references to reach the particular claimed [invention.]" *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1373 (Fed. Cir. 2008).  Notably, both the '314 and '492 patents have successfully concluded re-examination, and each re-examination certificate contains more than six pages of cited references.  Nothing in Dr. Keller's report (or his deposition testimony) explains why, when faced with this wealth of information in an area experiencing "explosive growth," a person of ordinary skill in the art would have made any particular combination.

To the extent that Dr. Cromarty's report discusses obviousness, like Dr. Keller's report, it fails to identify why a person of ordinary skill in the art would make any particular combination of any of the references on which Dr. Cromarty relies.  Typically, Dr. Cromarty makes the general, unsubstantiated contention that unidentified combinations of references allegedly render the '639 claims obvious "alone or in combination with other prior art identified in Defendants' Joint Invalidity Contentions or this report."  *See, e.g.*, Ex. 6, Cromarty Exhibit E at 1, 29, 45. The most Dr. Cromarty says about any specific combination is in his section concerning "AppleTalk" where he identifies a reference by Berners-Lee.  *See* Ex. 7, Cromarty Invalidity Report ¶¶ 85.  Absent a specific reason to combine particular references – a reason that Defendants' experts have not provided – Defendants' obviousness analysis is nothing more than the application of impermissible hindsight, and it should not be presented to the jury.

Likewise, Dr. Keller's report contains only a cursory statement of disagreement with Soverain's expert on validity, Dr. Shamos, concerning a single secondary consideration (commercial success) of non-obviousness.  Ex. 5, at ¶ 89.  Dr. Keller ignores the other secondary considerations identified by Dr. Shamos, such as long felt need, failure of others, and industry recognition.  Dr. Cromarty's report does not address secondary considerations at all.  The fact that Defendants' obviousness arguments are based on nothing more than hindsight is highlighted by this failure to address evidence of secondary indicia of non-obviousness, and Defendants should be precluded from presenting conclusory, unsupported opinions concerning obviousness.

**10.    Written Description/Enablement:**  Defendants should be precluded from introducing evidence, testimony, or arguments that any claims of the patents-in-suit are invalid for lack of written description and/or enablement.  Defendants have refused to provide the complete legal and factual bases in support of these purported affirmative defenses, despite

Soverain's repeated requests for such information.  Indeed, Defendants' February 26, 2010 Invalidity Contentions did nothing more than set forth general averments that ***all claims of the patents-in-suit*** are not enabled and/or lack adequate written description.  Since then, Defendants have failed to provide any further support for how or why certain claims, steps, or terms are purportedly not enabled or lack written description.

With respect to claim 34 of the '314 patent, the only claim that Defendants specifically challenge as not enabled, Dr. Keller alleges that a person of ordinary skill in the art would not be able to build the system recited in claim 34 without a "merchant computer."  *See* Keller Invalidity Report at ¶¶ 91.  Claim 34, however, does not recite a "merchant computer."  This argument is essentially the same argument that Defendants made during claim construction in an attempt to read numerous limitations, such as a "merchant computer," into the claim term "network-based sales system," which appears in the preamble of claim 34.  The Court rejected this argument:  "In addition to improperly importing limitations, Defendants' proposed construction is redundant and inconsistent."  Dkt. No. 332 at 9.  Here, Defendants are again attempting to read "merchant computer" into claim 34 to then argue that an element not found in the asserted claim is allegedly not enabled.  Defendants should not be permitted to make an end-run around the Court's construction of "network-based sales system" and present that same argument to the jury under the guise of enablement.  Such a maneuver would confuse the jury with an issue that this Court necessarily decided as a matter of law during claim construction.

## SOVERAIN'S MOTION *IN LIMINE* – AGREED

1.        **Reference to Soverain with a Pejorative Term:**  Evidence, statements, or arguments referring to Soverain as a "patent troll," "patent terrorist," or other similar pejorative term should be excluded.  *See* Fed. R. Evid. 402, 403.  Terms such as "patent troll" and "patent terrorist" have derogatory connotations and suggest that a patent owner is abusing the patent system by seeking to enforce its property rights in its patents.  By invoking such inflammatory terms at trial, Defendants would improperly allow the jury to assume that Soverain's actions in bringing this lawsuit are improper, when in fact the Federal Circuit has conclusively held that there is nothing improper about enforcing one's patent rights.  *See Kingsdown Med. Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867, 874 (Fed. Cir. 1988) ("[T]here is nothing improper, illegal or inequitable in filing a patent application for the purpose of obtaining a right to exclude a known competitor's product from the market . . . .").  Such prejudicial and derogatory terms have no place at trial and are not relevant to any issue in the case.  *See Cybergym Research, LLC v. Icon Health & Fitness, Inc.*, No. 2:05-cv-527-DF, Docket No. 260, at *2-3, (E.D. Tex. Oct. 7, 2007) (granting plaintiff's motion *in limine* in part and noting reference to Plaintiff as a patent troll "has no probative value and would unduly prejudice the Plaintiff").

Dated:  April 11, 2011                    Respectfully submitted,

    */s/Michael C. Smith*
    Michael C. Smith (Texas Bar. No. 18650410)
    michaelsmith@siebman.com
SIEBMAN, BURG, PHILLIPS & SMITH, LLP
113 East Austin Street
P.O. Box 1556
Marshall, Texas, 75670
Telephone: (903) 938-8900
Facsimile: (972) 767-4620

    Robert B. Wilson
    robertwilson@quinnemanuel.com
    Anastasia M. Fernands
    anastasiafernands@quinnemanuel.com
    Kate E. Cassidy
    katecassidy@quinnemanul.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

    David A. Nelson
    davenelson@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
500 West Madison, Suite 2450
Chicago, Illinois  60661
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

*Attorneys for Plaintiff Soverain Software LLC*

## CERTIFICATE OF CONFERENCE

The parties conferred by telephone on Wednesday April 6, 2011 and again on Friday April 8, 2011 regarding their respective Motions *in Limine*.  The parties have agreed to Soverain's motion concerning "Reference to Soverain with a Pejorative Term" as set forth above.  The parties were unable to reach agreement with respect to any of Soverain's other motions *in limine*.

*/s/Michael C. Smith*
Michael C. Smith


## CERTIFICATE OF SERVICE

I certify that a true and correct copy of Soverain Software LLC's Motions *In Limine* was served via e-mail on all counsel of record via the Court's CM/ECF system on this 11th day of April, 2011.

*/s/Michael C. Smith*
Michael C. Smith