**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| SOVERAIN SOFTWARE LLC, | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 6:09-cv-274-LED |
| J.C. PENNEY CORPORATION, INC., ET AL., | |
| Defendants. | |

**SOVERAIN'S REPLY IN SUPPORT OF ITS MOTION FOR**
**ATTORNEY'S FEES AND EXPENSES**

# TABLE OF CONTENTS

**Page**

I.      DEFENDANTS' SPOLIATION ACCUSATION IS UNFOUNDED ...............................2

    A.      Soverain Produced the FFB Source Code to Defendants at the Outset of
            this Case in 2009 ...................................................................................................3

    B.      There Is No Evidence that Soverain Received an Operational Copy of the
            Source Code, as Defendants Contend .....................................................................3

II.     DEFENDANTS MAKE ADDITIONAL MISREPRESENTATIONS
        REGARDING THE FUTURE FANTASY BOOKSTORE WEBSITE.............................4

    A.      Defendants' Argument that Dr. Trewitt Did Not Have the "What's New"
            File at His 2005 Deposition Is False ......................................................................4

    B.      Defendants Proffered the FFB Website as Prior Art, Even Though They
            Knew It Was Not .....................................................................................................6

III.    THE FACT THAT SOVERAIN PREVAILED AT TRIAL DOES NOT EXCUSE
        DEFENDANTS' MISCONDUCT DURING EXPERT DISCOVERY ............................7

IV.     DEFENDANTS TOLD THE COURT THEY WOULD PRODUCE THEIR
        MISSING DOCUMENTS, BUT DID NOT .......................................................................7

Defendants attempt to deflect attention away from their litigation misconduct by accusing Soverain of spoliation.  But contrary to Defendants' argument, Soverain did not destroy multiple copies of the source code for the Future Fantasy Bookstore website.  Instead, Soverain produced a copy of the source code at the outset of this case.  That copy had been marked as an exhibit at the 2005 deposition of Dr. Trewitt.  Soverain produced both the exhibit and the deposition transcript to Defendants in 2009.  Indeed, the copy of the source code that was marked as a trial exhibit is the same copy that Soverain originally produced.  It bears the exhibit sticker from Dr. Trewitt's 2005 deposition.  Thus, Defendants' last-minute accusations of spoliation are not only unsupported by the facts, but are another example of Defendants' ongoing bad faith.

Defendants also dig themselves deeper on other issues.  For example, Defendants argue that Soverain's earlier motion for sanctions regarding Defendants' misconduct during expert depositions is now moot.  But the Court instructed Soverain to file a formal motion for sanctions at the first pre-trial conference, and then told the parties at the second pre-trial conference that the Court would take the issue up in the context of a post-trial motion for exceptional case.  Thus, Soverain did not waive this issue, as Defendants suggest.  Rather, the Court held this issue over in light of its acknowledged seriousness.

Similarly, Defendants argue that their document productions were complete.  But they plainly were not.  After Soverain filed its motion to compel production, Defendants agreed to work with Soverain to produce the missing documents that Soverain had requested.  Defendants represented to the Court at the second pre-trial conference that it would do so.  But instead of following through on that representation, Defendants refused Soverain's renewed requests.  Defendants produced only a handful of new documents, most of which they had apparently determined they would rely on at trial.  And Defendants ignored Soverain's requests for any

explanation of what the late-produced documents disclosed.  Thus, Defendants' argument now that their document productions were complete all along is flatly inconsistent with their pre-trial representations to the Court that they would respond fully to the issues raised in Soverain's motion to compel with a complete production of all relevant information.

Finally, Defendants continue their pattern of misconduct in their opposition to Soverain's motion for post-judgment damages, which further demonstrates the extent to which Defendants are willing to argue whatever is expedient.  Most notably, Avon has buried its head in the sand regarding the $8.7 million verdict that the jury awarded against it.  Instead, Avon premises several of its post-trial arguments on an allocation that completely ignores the confusion that it created during closing arguments and the straightforward explanation that the jury simply transposed the amounts, exactly as Avon's counsel told them to do.  Likewise, Defendants' opposition disregards the applicable legal standard for post-judgment damages.  Instead, Defendants proffer an analysis that is completely divorced from the hypothetical negotiation and willfulness framework set forth in this Court's controlling decisions on that issue.  Taken together, Defendants' arguments post-trial further compound and expand upon their earlier misconduct and the exceptional nature of this case.

## I.     DEFENDANTS' SPOLIATION ACCUSATION IS UNFOUNDED

Defendants accuse Soverain of destroying copies of the source code for the Future Fantasy Bookstore ("FFB") website, "not once, but twice."  Opp'n at 8.  Defendants make sweeping allegations of spoliation that are unsupported by what actually happened at Dr. Trewitt's 2005 deposition and during discovery.  Defendants' unfounded accusations confirm the exceptional nature of this case and are a prime example of why sanctions are appropriate here.

2

**A.     Soverain Produced the FFB Source Code to Defendants at the Outset of this Case in 2009**

In the *Amazon* case, Dr. Trewitt produced documents concerning the FFB website in response to a third party subpoena.  Dkt 532, Ex. 3 at 27:16-29:2.  Those documents included a hard copy of the FFB source code.  *Id.* 27:22-28:1.  At Dr. Trewitt's deposition in that case on January 25, 2005, the hard copy of the FFB source code was marked as Exhibit 24.  And Dr. Trewitt testified specifically about that document.  *Id.* 27:22-28:6; 149:1-150:19; 156:22-157:2.

The Court entered the Docket Control Order on December 14, 2009.  Dkt. 175.  Two days later, on December 16, 2009, Soverain produced documents to the Defendants.  Included in those documents was a copy of the Trewitt deposition transcript in 2005 and a copy of the FFB source code that had been marked as Exhibit 24 at the Trewitt deposition.  SVN3-0053136.

Soverain did not "destroy[] its copy of the source code in between filing of lawsuits," as Defendants contend.  Opp'n at 4.  Instead, Soverain retained a copy of the source code, along with Dr. Trewitt's deposition transcript.  Defendants did not have to wait to "obtain a copy until March 2011."  Opp'n at 7.  Soverain had already produced it to Defendants in December 2009 – *fifteen months earlier*.  Indeed, the copy of the FFB source code that was marked at trial in this case is the same copy that Soverain produced in 2009.  Dkt 532 Ex. 2.  The exhibit tag from the 2005 Trewitt deposition appears on the first page of the trial exhibit.  *See id.*  And Dr. Trewitt confirmed during *voir dire* that the copy of the code marked at his deposition was the copy he produced to Soverain in the *Amazon* case.  11/15/11 pm Tr. at 19:17-23.

**B.     There Is No Evidence that Soverain Received an Operational Copy of the Source Code, as Defendants Contend**

At his deposition in 2005, Dr. Trewitt arrived with a copy of the FFB source code on his laptop.  Dkt. 543. Ex. A. at 21:11-16.  Dr. Trewitt had made certain modifications to that code so that it would be "operational" in order to create a demonstrative of the FFB website.  *Id*. at 15:6-

10. Soverain had not received a copy of Dr. Trewitt's further-modified source code prior to the deposition. Accordingly, at the deposition, Soverain requested a copy of the operational source code from Dr. Trewitt. *Id.* 17:1-5; 18:16-19:4.

Defendants argue that Soverain destroyed a copy of the operational source code. Opp'n at 8. But Defendants point to no evidence that Soverain ever received the copy it requested during Dr. Trewitt's deposition, let alone destroyed it after the *Amazon* case was over. *Id.* at 17:25-18:4. Defendants merely cite Dr. Trewitt's testimony during *voir dire* where he identifies the hard copy of the FFB source code as the copy he produced to Soverain. Opp'n at 8.

Defendants also argue that they only learned about the operational version of the source code in September of 2011. Opp'n at 7. But Defendants had the 2005 deposition transcript in which Dr. Trewitt testified about the operational version of the source code that he brought with him on his laptop. Defendants deposed Dr. Trewitt on January 13, 2011 in this case. They had every opportunity to ask Dr. Trewitt about the operational source code for the FFB website that he had prepared during the *Amazon* case, but they did not. Thus, contrary to Defendants' argument, the reason they were not aware of the operational source code (assuming they were not) was because they had apparently not reviewed Dr. Trewitt's 2005 deposition transcript that Soverain had produced over a year earlier.

## II.    DEFENDANTS MAKE ADDITIONAL MISREPRESENTATIONS REGARDING THE FUTURE FANTASY BOOKSTORE WEBSITE

### A.    Defendants' Argument that Dr. Trewitt Did Not Have the "What's New" File at His 2005 Deposition Is False

Defendants attempt to downplay the significance of Dr. Trewitt's admissions at his 2005 deposition that he would not be able to reconstruct the FFB website source code as it existed in 1994. Specifically, Defendants argue that "Dr. Trewitt did not have his 'change log' in front of

4

him while testifying" at his 2005 deposition.  Opp'n at 6.  Defendants argue that if he had, Dr. Trewitt would have been able to corroborate the specific changes made to the FFB website.  *Id*.

But Dr. Trewitt **did** have the "change log" – *i.e*., the "What's New" file – at his 2005 deposition.  Indeed, the "What's New" file was marked as part of Deposition Exhibit 24.  And Dr. Trewitt testified about that exhibit at his deposition.  *See* Dkt. 532, Ex. 3 at 149:4-150:1; 191:12-192:12; Dkt. 543, Ex. A at 16:3-22.  Most importantly, at his 2005 deposition – and with the What's New file in front of him – Dr. Trewitt testified that he did not have "any version control" system that would allow him to document "what changes were made" to the source code.  Dkt. 532, Ex. 3 at 149:4-16.  And with the What's New file in front of him, Dr. Trewitt further testified that he had no documents that would enable him to "recreate the exact" website software.  *Id.* at 149:22-150:1.  Thus, Defendants' argument is predicated on a misrepresentation that "Dr. Trewitt did not have his 'change log' in front of him while testifying" at his deposition, when in fact he did.  *See* Opp'n at 6.

There is no question that the "What's New" file or "change log" that was marked as an exhibit at Dr. Trewitt's 2005 deposition is the same document that was marked as a trial exhibit in this case.  The 2005 deposition label appears prominently on the face of Trial Exhibit PX-240.  *See* Dkt 532, Ex. 2.  Thus, Defendants' argument that "the 'change log' is the very corroboration that Soverain argues does not exist" is wrong.  Opp'n at 6.  The Court considered this document during Dr. Trewitt's *voir dire* examination and determined that it did not corroborate the FFB website as it operated in 1994 because Dr. Trewitt could not use it to reconstruct the source code that existed at that time.  11/15/2011 pm Tr. 15:5-18:15.  The change log was not sufficient to corroborate the functionality of the 1994 FFB website when Dr. Trewitt testified about it in 2005.  And it does not corroborate the functionality of the 1994 FFB website now.

### B.   Defendants Proffered the FFB Website as Prior Art, Even Though They Knew It Was Not

Defendants argue that they "only intended to use the website as a demonstrative."  Opp'n at 5.  Defendants stress this point in their opposition:  "Soverain's 'misconduct' allegation depends on its misrepresentation that the operational source code was being proffered as prior art.  *It was not*."  *Id.* (emphasis added).  But this argument is decidedly inconsistent with Defendants' representations about the FFB website at trial.  In their offer of proof, Defendants argued that the "Future Fantasy Bookstore (FFB) website "raises serious questions as to the validity of the '314 and '492 patents."  Dkt. 496 at 1.  And in their post-trial motion, Defendants argued that "Mr. Trewitt's presentation of [the Future Fantasy Bookstore website] was *critical* to Defendants' obviousness case," and the jury should have considered this "*prior art ecommerce website*."  Dkt. 534 at 57-58 (emphasis added).  Thus, Defendants repeatedly argued that they intended to rely on the FFB website as invalidating prior art.  Their recent arguments to the contrary ignore their earlier representations regarding the alleged significance of this art.

Indeed, Defendants even make inconsistent arguments in their opposition brief.  For example, Defendants initially argue that the FFB website was *not offered as prior art*.  Opp'n at 5.  Yet, Defendants later argue that "the record only supports the fact that the *Future Fantasy Bookstore website is prior art* to the patents-in-suit."  *Id.* at 8 (emphasis added).  Not only are these arguments fundamentally at odds with one another, but Defendants' latest argument begs the question.  If Defendants did not want to offer the website as prior art at trial, there was no point in showing the FFB website demonstrative to the jury.  Offering the website as a "demonstrative" is no better than misrepresenting the website as prior art in the first place.  Defendants apparently sought to prejudice the jury with a misleading demonstrative that the jury would almost certainly understand was being offered as prior art when it was not.

## III.     THE FACT THAT SOVERAIN PREVAILED AT TRIAL DOES NOT EXCUSE DEFENDANTS' MISCONDUCT DURING EXPERT DISCOVERY

Defendants suggest that because Soverain prevailed at trial, there has been no harm done.

Opp'n at 11-12.  But that argument turns Defendants' obligations under Rule 26 on their head.

Defendants had an *affirmative* duty to provide complete discovery with respect to their expert

opinions *before* trial so that Soverain could prepare its case, and in particular, its cross

examinations of Drs. Keller and Cromarty.  *See* Advisory Committee Notes Rule 26(a)(2) Fed.

R. Civ. P. 26.  The fact that Soverain was able to obtain key admissions from Dr. Keller at trial

*despite Defendants' misconduct* is not relevant to the determination of whether sanctions are

appropriate here.  Moreover, Defendants' "no-harm-no-foul" argument disregards the fact that

had Defendants provided timely discovery of their expert opinions, the issues on liability could

have been focused or eliminated altogether on summary judgment or otherwise.

Also, Soverain never "agreed to withdraw its sanctions motion."  *See* Opp'n at 11.  At the

first pre-trial conference, the Court directed Soverain to raise the issue in a formal sanctions

motion because the nature of Defendants' misconduct was too serious to be the subject of a

motion *in limine*.  4/21/2011 Pre-Trial Conf. Tr. 75:17-23.  And at the second pre-trial

conference, the Court told the parties that it would "carry" the issue forward and consider it in

the context of an overall motion for exceptional case.  10/20/2011 Pre-Trial Conf. Tr. 41:12-18.

The Court's instructions were clear.  There was no need for Soverain to keep raising its

objections to Defendants' discovery misconduct over the course of trial after the Court explained

it would resolve the pending issues in the context of post-trial motions.

## IV.     DEFENDANTS TOLD THE COURT THEY WOULD PRODUCE THEIR MISSING DOCUMENTS, BUT DID NOT

The night before the October pre-trial conference, Defendants agreed to supplement their

productions if Soverain would list the types of documents that were missing.  In light of that

7

representation, Soverain agreed to defer rulings on its pending motions to compel.  Soverain

reported the parties' agreement to the Court at the pretrial conference the following day.  *Id.* at

7:2-22.  And Defendants' counsel confirmed to the Court that they had agreed to produce the

documents and work with Soverain to provide the missing information.  *Id.* at 7:20-8:12.  As

agreed, Soverain provided Defendants with a list of the document categories covered by

Soverain's motions to compel.  Dkt. 543 at Ex. Q.  But, during a subsequent meet and confer,

Avon and Victoria's Secret refused to honor their agreement with Soverain and the commitment

they made to the Court to produce the missing documents.

Now, Defendants argue that, despite their earlier representations, their production of

documents had been complete all along, when they plainly were not.  Opp'n at 14-26.  During

the parties' discussions leading up to Soverain's motions to compel, it became clear that

Defendants had not even bothered to search for, let alone produce, entire categories of

documents that should have been collected months earlier during fact discovery.  After Soverain

identified those categories in writing, Defendants decided that it would be too much trouble to

respond to Soverain's requests, and went back on their representations to the Court.  Indeed,

Defendants' argument that they had already produced all relevant documents is undermined by

the examples they identify, which only highlight the deficiencies in Defendants' production.

For example, Avon argues that its business and marketing plans were produced in its

SEC filings, including its 10Ks.  Opp'n at 17.  But the information disclosed in Avon's publicly

available filings is, at most, a high level summary of its business plans.  Those documents do not

include internal business and marketing reports, presentations, or projections.  Remarkably,

Avon and Victoria's Secret argue that they do not have any internal, written documents relating

to their business or marketing plans.  *Id.* at 16-17; 20-22.  Given the size of both companies and

8

the proportion of their businesses that are ecommerce-related, it is inconceivable that neither company has a single internal document concerning their plans for their online businesses.

Similarly, both Defendants concede that they had entire databases of website tracking and usage data that they never produced to Soverain. *Id.* at 24-25. But Defendants never even identified those databases to Soverain during discovery. Yet, Defendants now attempt to justify their misconduct by blaming Soverain for not knowing about those databases earlier and asking Defendants to run queries on them. *Id.*

Defendants characterize Soverain's e-mail (listing the categories of missing documents) as an attempt "to burden Defendants" with "a 'laundry list' discovery demand in the weeks before trial." *Id.* at 25. But if Defendants had made a good faith effort to produce all documents during fact discovery, as they were obligated to do, they would not have been faced with the task of tracking down the missing information prior to trial. The length of Soverain's list merely reflected the large amount of information that Defendants had apparently withheld.

Finally, Defendants argue that the information Soverain sought was not relevant. *Id.* at 14-15, 21, 23-25. But Avon and Victoria's Secret both called witnesses who testified at length at trial about the development of their ecommerce businesses and their future plans. 11/15/2011 pm Tr. 100:4-116:7; 11/16/2011 am Tr. 15:25-32:2; 48:10-56:2. Likewise, Avon produced customer usage data on the eve of trial (in fact, the day the jury was selected) that it relied on extensively during the testimony of at least three of its witnesses. The significance of the withheld discovery is underscored by Defendants' own reliance on the same type of information at trial. Thus, it appears that Defendants produced the documents that they determined were potentially helpful for them and held back most, if not all, of the rest. That is exactly the type of abusive discovery tactic that renders this case exceptional.

Dated:  February 9, 2012                    Respectfully submitted,

                                            */s/ Michael C. Smith*
                                              Michael C. Smith

                                            Michael C. Smith (Texas Bar. No. 18650410)
                                            michaelsmith@siebman.com
                                            SIEBMAN, BURG, PHILLIPS & SMITH, LLP
                                            113 East Austin Street
                                            P.O. Box 1556
                                            Marshall, Texas, 75670
                                            Telephone: (903) 938-8900
                                            Facsimile: (972) 767-4620

                                            Robert B. Wilson
                                            robertwilson@quinnemanuel.com
                                            Kate E. Cassidy
                                            katecassidy@quinnemanuel.com
                                            QUINN EMANUEL URQUHART &
                                            SULLIVAN, LLP
                                            51 Madison Avenue, 22nd Floor
                                            New York, New York 10010
                                            Telephone: (212) 849-7000
                                            Facsimile: (212) 849-7100

                                            David A. Nelson
                                            davenelson@quinnemanuel.com
                                            QUINN EMANUEL URQUHART &
                                            SULLIVAN, LLP
                                            500 West Madison, Suite 2450
                                            Chicago, Illinois  60661
                                            Telephone: (312) 705-7400
                                            Facsimile: (312) 705-7401

                                            *Attorneys for Plaintiff Soverain Software LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) this 9th day of February, 2012.  Any other counsel of record will be served by facsimile transmission and/or first class mail.

<em>/s/Michael C. Smith</em>