IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| SOVERAIN SOFTWARE LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CASE NO. 6:09-CV-274 |
| | § | |
| J.C. PENNEY CORPORATION, INC. | § | |
| ET AL., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

The following motions are before the Court:

- Defendants' Motion for Summary Judgment of Non-Infringement Based on Divided Infringement (Docket No. 386);

- Defendants' Post-Trial Motion for Judgment as a Matter of Law and Alternatively for Remittitur and New Trial (Docket No. 534);

- Soverain's Motion for Attorney's Fees and Expenses (Docket No. 532);

- Soverain's Motion for Post-Judgment Royalties (Docket No. 531);

- Soverain's Motion for an Award of Pre- and Post-Judgment Interest, and Post-Verdict Damages (Docket No. 530); and

- Soverain Software LLC's Motion for Sanctions (Docket No. 422).

For the reasons stated below, Defendants' motions (Docket Nos. 386 & 534) are **DENIED**;

Soverain's motions for fees and sanctions (Docket Nos. 532 & 422) are **DENIED**; and

Soverain's motions for royalties and interest (Docket Nos. 531 & 530) are **GRANTED**.

## BACKGROUND

On June 25, 2009, Soverain Software LLC ("Soverain") filed this action against eighteen

defendants alleging infringement of U.S. Patent Nos. 5,715,314 ("the '314 Patent"); 5,909,492

("the '492 Patent"); and 7,272,639 ("the '639 Patent"). Before trial, Soverain dropped its allegations regarding the '639 Patent. The '492 Patent is a continuation of the '314 Patent, and the patents share a common specification. The '314 and '492 Patents were subject to reexaminations, and the U.S. Patent and Trademark Office ("PTO") issued Reexamination Certificates in 2007 affirming all of the original claims and adding additional claims.

The patents generally relate to performing electronic commerce transactions over the Internet; the asserted claims specifically relate to the use of shopping cart features and online statements. As shown in Figure 1 of the '314 Patent, a buyer's computer is connected to a network, such as the Internet, for connection to a merchant's computer and a payment computer. '314 Patent col. 4:35–45 & fig. 1.



FIG. 1

A shopping cart database is coupled to the payment computer. *Id.* A user reviews advertisements on a merchant computer and eventually requests a product. *Id.* col. 5:26–30. This results in a payment URL being sent from the buyer to the payment computer. *Id.* Rather than purchasing

immediately, the buyer computer may request that the product be added to a shopping cart. *Id.* col. 7:55–60. The payment computer may validate that the buyer is authorized (i.e., has approved credit) to purchase the product. The payment computer responds to the buyer computer with a message that gets redirected from the buyer computer to the merchant computer. In this manner, the merchant computer does not have to directly communicate with the payment computer. *Id.* cols. 1:50–2:18.

This Court construed the disputed terms of the patents-in-suit on January 13, 2011. *See* Docket No. 332 (*Markman* opinion). Only two of the initial eighteen defendants—Victoria's Secret Direct Brand Management, LLC ("Victoria's Secret") and Avon Products, Inc. ("Avon") (collectively "Defendants")—remained for trial, which was conducted on November 14–18, 2011. The jury found that Defendants infringed claims 34 and 51 of the '314 Patent and claims 15, 17, and 39 of the '492 Patent. Further, the jury found that none of the asserted claims were invalid as anticipated or obvious. Finally, the jury awarded $8.7 million in damages against Avon—$8,215,000 for the avon.com website and $485,000 for the youravon.com website—and $9.2 million in damages against Victoria's Secret for the victoriassecret.com website. *See* Docket No. 506 (jury verdict).

## DEFENDANTS' JUDGMENT AS A MATTER OF LAW REGARDING NON-INFRINGEMENT AND DAMAGES

Defendants move for judgment as a matter of law that they do not infringe the patents in suit for the following reasons: (1) divided infringement; (2) patent misuse; (3) prosecution history estoppel; and (4) insufficient evidence regarding Avon's item entry form. Defendants further argue that there was no admissible evidence of damages. Avon contends that it is entitled to remittitur with regard to the damage award relating to the avon.com website. Finally, Defendants alternatively request a new trial.

***Judgment as a Matter of Law, New Trial, and Remittitur Standards***

Judgment as a matter of law is only appropriate when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." FED. R. CIV. P. 50(a). "The grant or denial of a motion for judgment as a matter of law is a procedural issue not unique to patent law, reviewed under the law of the regional circuit in which the appeal from the district court would usually lie." *Finisar Corp. v. DirectTV Group, Inc.*, 523 F.3d 1323, 1332 (Fed. Cir. 2008). The Fifth Circuit "uses the same standard to review the verdict that the district court used in first passing on the motion." *Hiltgen v. Sumrall*, 47 F.3d 695, 699 (5th Cir. 1995). Thus, a jury verdict must be upheld, and judgment as a matter of law may not be granted, unless "there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did." *Id.* at 700. The jury's verdict must be supported by "substantial evidence" relating to each element of the claims. *Am. Home Assurance Co. v. United Space Alliance*, 378 F.3d 482, 487 (5th Cir. 2004).

A court reviews all evidence in the record and must draw all reasonable inferences in favor of the nonmoving party; however, a court may not make credibility determinations or weigh the evidence, as those are solely functions of the jury. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000). The moving party is entitled to judgment as a matter of law, "only if the evidence points so strongly and so overwhelmingly in favor of the nonmoving party that no reasonable juror could return a contrary verdict." *Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, 296 (5th Cir. 2005).

Under the Federal Rules of Civil Procedure, a new trial can be granted to any party to a jury trial on any or all issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." FED. R. CIV. P. 59(a). "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages

awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.3d 610, 612–13 (5th Cir. 1985).

Remittitur is within the sound discretion of the trial court and is only appropriate when the damages verdict is "clearly excessive." *See Alameda Films S.A. v. Authors Rights Restoration Corp.*, 331 F.3d 472, 482 (5th Cir. 2003).

## Divided Infringement

Defendants contend that they are entitled to judgment as a matter of law of non-infringement because Defendants do not put the entire claimed system into use, citing *Centillion Data Systems, LLC v. Qwest Communications International, Inc.*, 631 F.3d 1279 (Fed. Cir. 2011). *Centillion* involved a patent that claimed "a system for collecting, processing, and delivering information from a service provider, such as a telephone company, to a customer." *Centillion*, 631 F.3d at 1281. The system claims at issue included both a back-end component (server-side) maintained by the service provider and a front-end component (client-side) maintained by an end user. *Id.* The client-side of the system was a "personal computer data processing means adapted to perform additional processing," and included "front-end applications that a user may [download and] install on a personal computer." *Id.* The parties in *Centillion* disputed whether the user (client-side) or Qwest (server-side) used the claimed system under § 271(a).

The *Centillion* court held that the use of a system for infringement purposes required a party to "control the system *as a whole* and obtain benefit from it." *Id.* at 1284 (emphasis added) (citing *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1317 (Fed. Cir. 2005)). Use of a system does not require "physical or direct control over each individual element of the system." *Id.* Applying this standard, the court determined that the end-users "used" the system because they put the entire system into service by initiating a request and downloading the results for

further processing on the user's personal computer. *Id.* at 1285. However, the court found that Qwest did not use the system because "it never puts into service the personal computer data processing means." *Id.* Further, "[s]upplying the software for the customer to use is not the same as using the system." *Id.*

In the instant case, Defendants argue that they—like Qwest in *Centillion*—do not use the claimed system because the claims require a buyer computer[1] (client-side) and a shopping cart computer (server-side). Claim 34 of the '314 Patent is representative and states:

> A network-based sales system, comprising:
>
> > at least one buyer computer for operation by a user desiring to buy products;
> >
> > at least one shopping cart computer; and
> >
> > a shopping cart database connected to said shopping cart computer;
> >
> > said buyer computer and said shopping cart computer being interconnected by a computer network;
> >
> > said buyer computer being programmed to receive a plurality of requests from a user . . . ;
> >
> > said shopping cart computer being programmed to receive a plurality of shopping cart messages . . . ;
> >
> > said buyer computer being programmed to receive a request from said user . . . ;
> >
> > said shopping cart being a stored representation of a collection of products . . . .

'314 Patent cols. 13:62–14:28. The buyer computer is: (1) for operation by a user; (2) connected to a computer network; and (3) programmed to receive requests. The first two limitations of the buyer computer describe its general characteristics as a component of the overall system: namely, as a networked computer for operation by an end-user. The third limitation enables the buyer computer to operate as a meaningful component of the system, providing programming to permit the buyer computer to interact with the other components of the system, such as the

---

[1] Some claims require a buyer computer (claims 34 and 51 of the '314 Patent and claim 17 of the '492 Patent), while others require a client computer (claims 15 and 39 of the '492 Patent). The parties agree that the buyer computer and client computer are essentially the same for the purpose of a divided infringement analysis.

shopping cart computer. Defendants argue that this third characteristic, requiring the computer to be programmed, dictates that they cannot infringe as a matter of law because "supplying software for the customer to use is not the same as 'using' the system." Docket No. 534, at 27.

Defendants' argument relies on the Federal Circuit's statement in *Centillion* that "[s]upplying the software for the customer to use is not the same as using the system." *Centillion*, 631 F.3d at 1286. In *Centillion*, the "personal computer data processing means" was "adapted to perform additional processing" by software provided by Qwest. Customers were required to download and install the software to take advantage of the "additional processing." Here, unlike Qwest, Defendants do not require their customers to download and install software so that the buyer computer is able to interact with the shopping cart computer as required by the claims. Rather, the delivery of Defendants' web page itself provides the programming required by the claims; the user is not required to install anything. Thus, Defendants' web server, by delivering web pages containing embedded programming, puts the system as a whole into service so that Defendants may benefit from the system. Accordingly, Defendants use the system under § 271(a) by putting the system into service, i.e., controlling the system as a whole and deriving benefit from it. Defendants' motion for judgment as a matter of law that it does not use the system claimed by the patents-in-suit is **DENIED**. Further, Defendants' Motion for Summary Judgment of Non-Infringement Based on Divided Infringement (Docket No. 386), raising the same arguments just addressed, is **DENIED AS MOOT**.

### *Patent Misuse*

Defendants argue that the patents-in-suit are unenforceable under the doctrine of patent misuse because Soverain "presented a reasonable royalty model that includes fees charged well past the expiration of the asserted patents." Docket No. 534, at 41. Patent misuse is "grounded in the policy-based desire to 'prevent a patentee from using the patent to obtain market benefit

beyond that which inheres in the statutory patent right.'" *Princo Corp. v. ITC*, 616 F.3d 1318, 1328 (Fed. Cir. 2010) (en banc) (quoting *Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 704 (Fed. Cir. 1992)). Patent misuse is typically found when a patentee seeks to obtain post-expiration royalties via licensing agreement or ties use of the patented invention to required purchases of non-patented products. *See, e.g.*, *Brulotte v. Thys Co.*, 379 U.S. 29 (1964) (finding patent misuse for charging licensing fees beyond expiration of the licensed patent); *Motion Picture Patents Co. v. Universal Film Mfg. Co.*, 243 U.S. 502 (1917) (finding patent misuse for licensing patented projectors only for use with films leased from the patentee).

Here, Soverain argued that the Transact system was an alternative to licensing the patents-in-suit and presented evidence regarding how much it would cost to implement this alternative during the relevant period. The costs of adopting the system included initial licensing fees, implementation costs, and maintenance and support costs. The maintenance and support costs were calculated from 1998 to perpetuity; however, Soverain's expert, Mr. Raymond Sims, explained that the discounted costs become virtually nothing beyond twenty years. Tr. Trial Morning Session 133–34, Nov. 15, 2011. He further explained that a party to the hypothetical negotiation would have considered the entire cost of the alternative system in determining what constituted a reasonable royalty rate for the patents-in-suit. On cross-examination, Defendants highlighted that the maintenance costs went beyond the 2015 expiration date of the patents-in-suit. The jury was able to consider whether these costs should form the basis for a reasonable royalty. Soverain did not attempt to extract post-expiration royalties; rather, it considered the entire cost of implementing an alternative system for the purpose of determining what reasonable royalty rate would have been agreed to as part of the hypothetical negotiation. Soverain's

arguments do not equate to patent misuse, which is a narrowly construed doctrine. *See Princo Corp.*, 616 F.3d at 1329 (recognizing the narrow scope of the patent misuse doctrine).

**Prosecution History Estoppel**

Defendants contend that they are entitled to judgment as a matter of law of non-infringement under the doctrine of equivalents based on amendments made to claim 34 of the '314 Patent during prosecution. The amendment to claim 34 added the following language:

> said shopping cart being a stored representation of a collection of products, said shopping cart database being a database of stored representations of collections of products, and said shopping cart computer being a computer that modifies said stored representations of collections of products in said database

Docket No. 534 attach. 9, at 2. This language was added to "define the terms 'shopping cart,' 'shopping cart computer,' and 'shopping cart database' in context . . . ." *Id.* at 4. Defendants argue that this amendment places a physical limitation on the shopping cart computer, prohibiting a shopping cart computer comprised of multiple physical computers.

Defendants' argument is contrary to the Court's construction of the term "shopping cart computer" and the parties' agreed construction of the term "computer." This Court construed "shopping cart computer" as "a computer processing data associated with one or more shopping carts." *See* Docket No. 332, at 16–17. Further, the parties agreed to a construction of "computer" as "a functional unit that can perform substantial computation, including numerous arithmetic operations, or logic operations without human intervention." *Id.* at 1, 27. This agreed construction of computer does not limit a computer to a single physical computing device; it permits a plurality of physical computing devices to operate in concert as a computer. Soverain's amendment to claim 34 does not prohibit a computer comprised of multiple physical computing devices. The amendment merely clarifies that a shopping cart computer is "a *computer* that modifies said stored representations of collections of products in said database." Docket No. 534

attach. 9, at 2 (emphasis added). The amendment provides functional limitations on the computer, not physical or structural limitations. Accordingly, Soverain was not prohibited from arguing that multiple physical computing devices acting in concert met the "shopping cart computer" limitation either directly or via the doctrine of equivalents.

### Avon's Item Entry Form

Avon argues that it is entitled to judgment as a matter of law that the youravon.com "item entry form" does not infringe the patents-in-suit because Soverain failed to present evidence regarding the item entry form. Avon's youravon.com website has two methods for ordering products: (1) the item entry form and (2) the electronic brochure. Soverain accused the electronic brochure method. Avon argued at trial that 70–80% of its online orders were via the item entry form. Tr. Trial Afternoon Session 113, Nov. 15, 2011. However, this figure was contested, leaving a fact issue for the jury to determine. *See id.* at 121–23. The issue is whether there was substantial evidence to support the jury's damage award regarding youravon.com, not whether the item entry form infringed. As explained in the next section, the damages award—as corrected—is supported by substantial evidence.

### Damages Evidence

Defendants argue that they are entitled to judgment as a matter of law because Soverain failed to present admissible evidence of damages. Defendants contend that Soverain's expert, Sims, improperly used the entire market value rule, improperly used the cost of Transact as the starting point for a hypothetical negotiation analysis, and improperly applied the *Georgia-Pacific*[2] factors.

---

[2] *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970).

Sims used the value of products sold via the infringing websites as the royalty base.[3] He then determined the profit earned on these products. Finally, he evaluated the cost of implementing the Transact system—a stipulated embodiment of the patents-in-suit—to derive a starting point for his *Georgia-Pacific* factor analysis to arrive at a final royalty rate. *See* Tr. Trial Morning Session 111–15, Nov. 15, 2011.

Neither Sims nor Napper used the entire market value to determine the royalty base. The patented system is implemented via Defendants' websites; thus, the patents relate to features of these websites. Had Soverain used the cost of implementing the entire website as its royalty base, the entire market value would have been implicated. Here, the patented system permits online sales, which provides the base for both damages experts' analysis. Sims's analysis was appropriately tied to the facts of this case and presented a justifiable royalty rate measured against online sales enabled by the patented technology.

The parties agreed that the Transact system embodied the patents-in-suit, and this system was available at the time Defendants' infringement began. Thus, it was appropriate for Sims to use the cost of implementing the Transact system in establishing a starting point rate for the hypothetical negotiation. Further, Sims performed an analysis of the *Georgia-Pacific* factors to justify increasing his initial rate, which was based on the Transact alternative. Defendants contend that Sims ignored evidence pertaining to certain factors; however, their arguments are an effort to reweigh the evidence pertaining to each of the factors. Sims presented his *Georgia-Pacific* factor analysis, and Napper presented his. It was for the jury, not the Court, to weigh the evidence in arriving at a reasonable royalty. Accordingly, the damages evidence presented to the jury was properly admitted and considered.

---

[3] Defendants' expert, Mr. Brian Napper, also relied on online sales to arrive at his proposed royalty base. *See* Tr. Trial Afternoon Session 80–81, Nov. 16, 2011.

*Remittitur*

Defendants alternatively argue that the damages award pertaining to avon.com should be remitted because it is against the great weight of the evidence. Soverain contends that the damages award, as to Avon, is supported by the evidence, and the jury merely transposed the numbers for avon.com and youravon.com on the verdict form.

Soverain sought approximately $9.7 million in damages against Avon—for the avon.com and youravon.com sites—and $9.2 million in damages against Victoria's Secret—for the victoriassecret.com site. The verdict form provided three entries for damages, one for each of the accused websites: (1) avon.com; (2) youravon.com; and (3) vistoriassecret.com. The jury awarded $8,215,000 for avon.com; $485,000 for youravon.com; and $9,200,000 for victoriassecret.com. *See* Docket No. 506. Evidence at trial indicated that approximately 95% of Avon's online sales were conducted through the youravon.com site. The jury's damages award regarding victoriassecret.com matches the amount sought by Soverain. The jury's award for youravon.com represents 5% of the amount Soverain sought from Avon, while the award for avon.com represents $1 million less than 95% of the amount Soverain sought from Avon. Thus, the jury elected to award Soverain $8.7 million in damages against Avon rather than the requested $9.7 million. However, the allocation between the two Avon websites does not match the evidence presented. The evidence showed that the bulk of the orders were through youravon.com; however, the jury awarded the bulk of the damages for infringement relating to the avon.com site.

The discrepancy is easily explained by Defendants' closing arguments. Defendants' demonstrative transposed the amounts their damages expert, Napper, proposed throughout his testimony. The demonstrative proposed $20,628 in damages relating to youravon.com and $457,991 in damages relating to avon.com—transposing the amounts that Napper had proposed

during his damages analysis. *Compare* Tr. Trial 101:14–18, Nov. 18, 2011 (discussing the closing argument demonstrative), *with* Tr. Trial Afternoon Session 99–100, Nov. 16, 2011 (Napper's testimony regarding damages for avon.com). Defendants' counsel informed the jury that the amounts were transposed. Tr. Trial 101:17–21, Nov. 18, 2011. However, counsel then stated that the demonstrative was correct. *Id.* at 101:22–102:3. Finally, counsel again asserted that the numbers on the slide were reversed. *Id.* at 102:6–12.

That counsel transposed these numbers during closing arguments is understandable. Likewise, it is understandable that the jury transposed its damages awards for youravon.com and avon.com. The $8,215,000 award corresponding to avon.com is not supported by the evidence, and both parties seemingly acknowledge this. *See* Docket No. 534, at 24–26 (Defendants arguing that the avon.com award is not supported by the evidence); Docket No. 539, at 3–9 (Soverain arguing that the damages for the Avon sites should be transposed to align with the evidence presented at trial). However, the jury's Avon award—after transposition—almost mirrors the 95%–5% division of online orders between the two sites. This Court has the power to correct clerical mistakes "in a judgment, order, or other part of the record." FED. R. CIV. P. 60(a); *see also Robert Tyer & Assocs., Inc. v. Envtl. Dynamics, Inc.*, 1997 U.S. App. LEXIS 19101 (Fed. Cir. 1997) (unpublished) (recognizing the broad discretion courts have under Rule 60 to correct errors in verdict forms). Here, the jury made a clerical error in filling-out the verdict form, and the damages award for the two Avon sites shall be transposed as follows: $8,215,000 for youravon.com and $485,000 for avon.com. The corrected verdict is supported by substantial evidence in the record, and Defendants' request for remittitur is **DENIED**.

## New Trial

Defendants argue that they are entitled to a new trial based on improperly excluded evidence and because the verdict was against the great weight of the evidence. Specifically, Dr.

Glenn Trewitt, a former employee at Digital Equipment Corporation, was prepared to testify about the operation of an online bookstore website, the Future Fantasy Bookstore ("FFB"). Trewitt was also prepared to testify about a technical note he wrote concerning the Tcl language that mentioned the FFB. *See* Tr. Trial Afternoon Session 41, Nov. 15, 2011 (describing the Tcl technical note to the jury). Defendants contend that this evidence supported a finding that the patents are invalid as obvious. The Court did not permit testimony about the operation of the FFB beyond what was covered in the Tcl technical note because Trewitt's testimony was not corroborated.

 "[C]orroboration is required of any witness whose testimony alone is asserted to invalidate a patent, regardless of his or her level of interest." *Finnigan Corp. v. Int'l Trade Commission*, 180 F.3d 1354, 1369 (Fed. Cir. 1999). "Both physical evidence and oral testimony of a disinterested party can serve to satisfy the corroboration requirement." *TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1159 (Fed. Cir. 2004).

Trewitt developed and hosted the FFB from 1993 to 1999. However, he only had a 1999 version of the code that implemented the FFB website. This code included a "What's New" page describing high-level changes to the site throughout the time it was hosted. The critical date for the patents-in-suit was in 1994. Defendants offered Trewitt's testimony to invalidate the patents-in-suit as obvious; thus, the relevant corroborating FFB code would be from the 1994 timeframe, not the 1999 code that Defendants tendered. Defendants argued that the What's New page was essentially a change-tracking mechanism. Source code change-tracking systems typically allow reconstruction of older versions of the source code; however, the high-level descriptions provided by the What's New page did not allow for that type of reverse-engineering. Further, the What's New page focused on customer-visible features of an ecommerce website, while the

asserted claims address the underpinnings (often invisible to end-users) of such an ecommerce website. Due to the absence of corroborating evidence, the Court prohibited Trewitt from testifying about the features of the FFB website beyond what was revealed in the Tcl technical note. *See* Tr. Trial Afternoon Session 33–34, Nov. 15, 2011.

Trewitt's uncorroborated testimony was properly excluded, and Defendants' are not entitled to a new trial on that basis. Further, there is sufficient evidence in the record to support the jury's verdict that the patents are infringed and not invalid. Thus, Defendants' request for a new trial is **DENIED**.

## SOVERAIN'S MOTION FOR ATTORNEY'S FEES AND EXPENSES

Soverain asks the Court to declare this case exceptional under 35 U.S.C. § 285 and award attorney's fees. "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. Awarding attorney's fees under § 285 is a two-step process. *Cybor Corp. v. FAS Tech.*, 138 F.3d 1448, 1460 (Fed. Cir. 1998). "First, the district court must determine whether a case is exceptional, a factual determination reviewed for clear error. After determining that a case is exceptional, the district court must determine whether attorney fees are appropriate." *Id.* (internal citation omitted).

Soverain argues that the instant case is exceptional for the following three reasons: (1) Defendants intentionally withheld expert discovery; (2) Defendants sought to admit source code at trial as prior art that they knew was not prior art; and (3) Defendants intentionally withheld factual discovery. Soverain's first argument that this case is exceptional pertains to the depositions of Defendants' experts, Drs. Arthur Keller and Andrew Cromarty. Soverain argues that Keller and Cromarty were unresponsive during their depositions and both read lengthy portions of their expert report into the record when answering questions. Soverain contends that the witnesses were coached to be non-responsive and evasive. Defendants respond that the

experts attempted to answer the questions and often relied directly on their expert reports to avoid being caught in a "memory-test trap" by deposing counsel. Defendants further explained that Keller and Cromarty were not experienced deponents—in fact, this was Cromarty's first deposition.

Thorough review of the deposition transcripts reveals that the actions of Keller, Cromarty, and Defendants' counsel throughout the depositions do not warrant a finding that the case is exceptional under § 285. The Court is sensitive to discovery misconduct and will apply sanctions as needed. *See VirnetX Inc. v. Cisco Sys., Inc.*, No. 6:10-cv-417 (E.D. Tex. Aug. 8, 2012) (imposing sanctions for misconduct during a deposition). Though the depositions of Keller and Cromarty may not have been as smooth as Soverain would like, it appears that counsel was generally able to obtain answers to his questions. Keller and Cromarty did not blatantly evade the questions being asked. While not desirable, their lengthy answers (at times) and hesitation to deviate from the language of their expert reports do not rise to the level of warranting sanctions or a finding that the case is exceptional.

Soverain's remaining two arguments that this case is exceptional are also unavailing. As discussed earlier, Defendants sought to admit the testimony of Dr. Trewitt regarding the FSB online bookstore. The Court did not permit this testimony for lack of corroboration. Losing on an evidentiary ruling is not a basis for finding a case exceptional. Likewise, Soverain's mere argument that Defendants failed to produce documents does not tip the scale. Defendants have consistently indicated that they produced documents in a timely manner. *See* Docket No. 543, at 14–16, 21–24. Soverain infers the existence of documents based on generic statements about business models or plans. *See* Docket No. 532, at 22–25. Defendants have asserted that the requested documents either do not exist or have already been produced. Absent more significant

proof of withholding, the Court will not conclude that Defendants withheld discoverable materials. Accordingly, the instant case is not an exceptional case under § 285, and Soverain's motion for attorney's fees (Docket No. 532) and motion for sanctions (Docket No. 422) are **DENIED**.

### SOVERAIN'S MOTION FOR AN AWARD OF PRE- AND POST-JUDGMENT INTEREST, AND POST-VERDICT DAMAGES

Soverain seeks an award of pre- and post-judgment interest on the damages award. Defendants argue that Soverain is not entitled to interest because it delayed bringing the instant suit. Soverain also seeks post-verdict damages. Defendants agree that Soverain is entitled to post-verdict damages, but dispute the royalty rate that should apply.

A court should award interest in patent cases after a finding of infringement. 35 U.S.C. § 284. The purpose of prejudgment interest is to place the patentee in as good a position as he would have been had the infringer paid a reasonable royalty instead of infringing. *Beatrice Foods v. New England Printing*, 923 F.2d 1576, 1580 (Fed. Cir. 1991). Prejudgment interest should be awarded unless there is a significant justification for withholding such an award, such as a delay in bringing suit against the infringer. *See Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983); *Bio-Rad Labs. v. Nicolet Instrument Corp.*, 807 F.2d 964, 967 (Fed. Cir. 1986). The interest rate used to calculate prejudgment interest and the method and frequency of compounding are left to the discretion of the district court. *See Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991); *Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 862 F.2d 1564, 1579–80 (Fed. Cir. 1988) (citing *Bio-Rad Labs.*, 807 F.2d at 969).

Defendants argue that Soverain intentionally waited to file the instant suit in order to reap a larger damage award due to Defendants' increased online sales. Soverain responds that it was actively enforcing its patents in other cases while also defending the patents in reexamination

proceedings. "[T]he withholding of prejudgment interest based on delay is the exception, not the rule . . . ." *Lummus Industries, Inc. v. D.M. & E. Corp.*, 862 F.2d 267, 275 (Fed. Cir. 1988). There was not unreasonable delay in bringing suit, and Soverain is entitled to prejudgment and post-judgment interest calculated at the prime rate as of the date of this order, compounded quarterly. *See Clear With Computers, LLC v. Hyundai Motor Am., Inc.*, No. 6:09-cv-479, slip op. at 14 (E.D. Tex. Jan. 9, 2012) (awarding interest at the prime rate, compounded quarterly).

Soverain also seeks post-verdict, prejudgment damages. Defendants agree that Soverain is entitled to post-verdict damages, but dispute the rate. The parties agree that the jury arrived at a 0.4% royalty rate regarding Victoria's Secret. Soverain argues, by combining the damages award pertaining to the avon.com and youravon.com sites, that the jury arrived at a 0.36% royalty rate regarding Avon. Avon, however, determines the rate on a per-site basis: 7.18% for avon.com and 0.02% for youravon.com.[4] Avon does not dispute the 0.02% rate for youravon.com, but argues that the 7.18% rate for avon.com is excessive.

In light of the corrected verdict form, the appropriate per-site rate for Avon is: 0.42% for avon.com and 0.35% for youravon.com. Thus, the royalty rate per site for infringement occurring between verdict and judgment is: (1) 0.4% for victoriassecret.com; (2) 0.42% for avon.com; and (3) 0.35% for youravon.com.[5]

### SOVERAIN'S MOTION FOR POST-JUDGMENT ROYALTIES

Soverain asks the Court to impose a post-judgment royalty that is quadruple the royalty implied by the jury verdict. Defendants object to the royalty for many of the reasons that they objected to the damages evidence presented in this case. Further, Defendants contend that

---

[4] Avon's rates are supported by the data presented in Sims's declaration. *See* Docket No. 530, attach. 1.
[5] These rates were derived from the data presented in Sims's declaration using the corrected verdict form numbers.

Soverain's 4x multiplier results from an erroneous analysis regarding changed factors post-judgment.

"The award of an ongoing royalty instead of a permanent injunction to compensate for future infringement is appropriate in some cases." *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 670 F.3d 1171, 1192 (Fed. Cir. 2012) (citing *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314 (Fed. Cir. 2007)). An ongoing royalty is a form of equitable relief authorized under 35 U.S.C. § 283. *See Paice*, 504 F.3d at 1315 n.16. The Court is not bound by the prejudgment royalty rate found by the jury. *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1361–62 (Fed. Cir. 2008). "[P]re-suit and post-judgment acts of infringement are distinct, and may warrant different royalty rates given the change in the parties' legal relationship and other factors." *Paice*, 504 F.3d at 1317 (Rader, J., concurring).

The Court ordered the parties to mediate prior to filing post-verdict motions "[i]n an effort to reach a business solution in a timely and efficient manner." Docket No. 515. The parties were unable to arrive at such a business solution and, based on their post-verdict briefing, have not agreed to an ongoing royalty rate. *See* Docket No. 529 (reporting a post-verdict mediation impasse). Soverain argues that it is entitled to an enhanced ongoing royalty rate based on changed factors in the hypothetical negotiation and Defendants' now willful infringement. Defendants argue that Soverain has improperly reconsidered factors that were before the jury in arriving at its proposed rate.

Soverain contends that multiple changed circumstances warrant a higher royalty rate than that found by the jury, including: (1) litigation expenses; (2) Defendants' enhanced profitability in 2012 versus 1998[6]; (3) the proven success of ecommerce technology in 2012 versus 1998; and (4) the cost of implementing Transact in 2012 versus 1998. Applying these considerations,

---

[6] The parties agreed during trial that 1998 was the appropriate timeframe for the hypothetical negotiation.

Soverain argues that the jury's royalty rate should be doubled. Then, Soverain argues that the rate should be doubled again under the *Read*[7] factors based on continued willful infringement.

Soverain seeks to double the jury's implied royalty rate based on changed circumstances between 1998 and 2012. The "book of wisdom" rubric permits damages experts to consider post-infringement information in arriving at a hypothetically negotiated royalty rate. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1333 (Fed. Cir. 2009) (quoting *Sinclair Refining Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689, 698 (1933)). Accordingly, Soverain's expert, Sims, considered post-1998 evidence in arriving at his damages model. The jury also heard and considered this evidence. *See* Tr. Trial Morning Session 109, Nov. 15, 2011 (discussing how the patented technology was used to improve the profitability of Defendants' businesses); *id.* at 111 (discussing the success of ecommerce sales in 2004 and 2009). Further, as discussed earlier, the cost of implementing the Transact alternative to licensing the patents-in-suit was presented to the jury. This alternative included the costs of implementing Transact through the life of the patents-in-suit. Thus, the jury has already heard and considered the evidence of changed circumstances that Soverain now contends should be considered in a post-judgment royalty analysis. The jury's implied royalty rate provides a starting point for determining the ongoing post-judgment royalty rate. *See Affinity Labs of Tx., LLC. v. BMW N. Am., LLC*, 783 F. Supp. 2d 891, 898 (E.D. Tex. 2011) ("[T]he trial testimony and jury findings with respect to past damages can provide a basis for calculating a market royalty for any ongoing infringement."). Here, there are no changed market circumstances that should now alter the royalty rate implied by the corrected verdict.

The *Read* factors provide guidance in determining whether and how much damages should be enhanced in light of Defendants' ongoing willful infringement. These factors include:

---

[7] *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992).

(1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) the infringer's size and financial condition; (5) the closeness of the case; (6) the duration of the infringer's misconduct; (7) any remedial action taken by the infringer; (8) the infringer's motivation for harm; and (9) whether the infringer attempted to conceal its misconduct. *See Read*, 970 F.2d at 827.

The first *Read* factor—whether Defendants copied the patents-in-suit—is neutral because there is no evidence of copying. Factors two and five—whether Defendants had a good faith belief that the patents are invalid or not infringed and the closeness of the case—strongly favor enhancement. Defendants are now adjudged infringers and the patents were deemed not invalid. Accordingly, Defendants cannot assert a good-faith belief of non-infringement or invalidity, and the case is no longer a close one. Factor three—the Defendants' litigation conduct—does not favor enhancement for the reasons discussed earlier regarding Soverain's motion for attorney's fees. Factor four—the size and financial condition of Defendants—also favors enhancement. Both Victoria's Secret and Avon are large, profitable companies. *See* Docket No. 531, at 20–21. Factor six, regarding the duration of misconduct, is neutral because it is unknown how long Defendants may opt to continue infringement. Factor seven, regarding remedial action, favors enhancement because there is no evidence that Defendants have taken any steps to stop infringement. Finally, factors eight and nine—Defendants' motivation for harm and attempts at concealment—are neutral because there is no evidence that Defendants intended to harm Soverain or attempted to conceal their infringing activity.

Defendants have challenged Soverain's allegations of infringement and the validity of the patents. The jury, supported by substantial evidence, determined that Defendants infringe and that the patents are not invalid. Thus, should Defendants continue infringing, they do so in a willful manner. Taking all of the *Read* factors into consideration, a 2.5x enhancement to the jury's implied royalty rate is appropriate. Thus, Soverain is entitled to the following ongoing royalty rates: (1) 1.0% for victoriassecret.com; (2) 1.05% for avon.com; and (3) 0.875% for youravon.com.

## CONCLUSION

For the reasons stated herein, Defendants' Motion for Summary Judgment of Non-Infringement Based on Divided Infringement (Docket No. 386) is **DENIED as MOOT**; Defendants' Post-Trial Motion for Judgment as a Matter of Law and Alternatively for Remittitur and New Trial (Docket No. 534) is **DENIED**; Soverain's Motion for Attorney's Fees and Expenses (Docket No. 532) is **DENIED**; Soverain's Motion for Post-Judgment Royalties (Docket No. 531) is **GRANTED**; Soverain's Motion for an Award of Pre- and Post-Judgment Interest, and Post-Verdict Damages (Docket No. 530) is **GRANTED**; and Soverain Software LLC's Motion for Sanctions (Docket No. 422) is **DENIED**.

**So ORDERED and SIGNED this 9th day of August, 2012.**

**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**